DELLMUTH, ACTING SECRETARY OF EDUCATION
OF PENNSYLVANIA *v.* MUTH ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR
THE THIRD CIRCUIT

No. 87–1855.   Argued February 28, 1989—Decided June 15, 1989

*Maria Parisi Vickers*, Chief Deputy Attorney General of Pennsylvania, argued the cause for petitioner. With her on the briefs were *LeRoy S. Zimmerman*, former Attorney General, *Ernest D. Preate, Jr.*, Attorney General, *John G. Knorr III*, Chief Deputy Attorney General, and *Gregory R. Neuhauser*, Senior Deputy Attorney General.

*Martha A. Field* argued the cause for respondents and filed a brief for respondent Muth. *Joanne D. Sommer* filed a brief for respondent Central Bucks School District.*

---

*Lacy H. Thornburg*, Attorney General, and *Edwin M. Speas, Jr.*, Special Deputy Attorney General, filed a brief for the State of North Carolina as *amicus curiae* urging reversal.

*Minna J. Kotkin, Kathleen A. Sullivan, Herbert Semmel*, and *Elizabeth Lottman Schneider* filed a brief for the American Civil Liberties Union et al. as *amici curiae* urging affirmance.

JUSTICE KENNEDY delivered the opinion of the Court.

The question before us is whether the Education of the Handicapped Act abrogates the States' Eleventh Amendment immunity from suit in the federal courts.

I

The Education of the Handicapped Act (EHA), 84 Stat. 175, as amended, 20 U. S. C. § 1400 *et seq.* (1982 ed. and Supp. V.), enacts a comprehensive scheme to assure that handicapped children may receive a free public education appropriate to their needs. To achieve these ends, the Act mandates certain procedural requirements for participating state and local educational agencies. In particular, the Act guarantees to parents the right to participate in the development of an "individualized education program" (IEP) for their handicapped child, and to challenge the appropriateness of their child's IEP in an administrative hearing with subsequent judicial review. See 20 U. S. C. § 1415 (1982 ed. and Supp. V); *School Committee of Burlington* v. *Department of Education of Massachusetts,* 471 U. S. 359, 361 (1985).

Alex Muth, the son of respondent Russell Muth (hereinafter respondent), is a bright child, but one handicapped within the meaning of the EHA by a language learning disability and associated emotional problems. Alex was enrolled in public school in the Central Bucks School District of Pennsylvania from 1980 to 1983. In the summer of 1983, respondent requested a statutory administrative hearing to challenge the district's IEP for Alex. In September, shortly before the hearing convened, respondent enrolled Alex in a private school for learning disabled children for the coming school year.

The hearing examiner found that Alex's original IEP was inappropriate and made a number of recommendations. Both respondent and the school district then appealed the decision to the secretary of education, as provided under Pennsylvania law, see 22 Pa. Code § 13.32(24) (1988). The secretary remanded the case to the hearing examiner with in-

structions to the school district to revise Alex's IEP (1988). After the district did so, the hearing examiner issued a decision declaring the revised IEP appropriate, and the secretary affirmed that decision on October 24, 1984, more than a year after the original due process hearing.

While the administrative proceedings were underway, respondent brought this suit in the Eastern District of Pennsylvania against the school district and the state secretary of education, whose successor is petitioner here. As amended, respondent's complaint alleged that the district's IEP for Alex was inappropriate and that the Commonwealth's administrative proceedings had violated the procedural requirements of the EHA in two respects: the assignment of review to the secretary, an allegedly partial officer; and the delays occasioned by the secretary's remand to the hearing examiner. Respondent requested declaratory and injunctive relief, reimbursement for Alex's private-school tuition in 1983–1984, and attorney's fees.

The District Court found various procedural infirmities in Pennsylvania's administrative scheme and entered summary judgment on respondent's procedural claims. The court held a hearing to resolve the remaining issues in the case and to determine the proper remedy for the procedural violations. The court concluded that, while the district's proposed IEP for 1983–1984 had been appropriate within the meaning of the EHA, respondent was entitled to reimbursement for Alex's tuition that year because the procedural flaws had delayed the administrative process. The District Court further determined that the school district and the Commonwealth of Pennsylvania were jointly and severally liable, agreeing with respondent that the EHA abrogated Pennsylvania's Eleventh Amendment immunity from suit. The court also awarded attorney's fees, assessed jointly and severally against the school district and the Commonwealth.

The United States Court of Appeals for the Third Circuit affirmed. *Muth* v. *Central Bucks School Dist.*, 839 F. 2d

113 (1988). Most pertinent for this case, the Court of Appeals agreed with the District Court that the Eleventh Amendment did not bar the reimbursement award against the Commonwealth. The court concluded that "the text of EHA and its legislative history leave no doubt that Congress intended to abrogate the 11th amendment immunity of the states." *Id.*, at 128.

To resolve a conflict among the Circuits, we granted certiorari *sub nom. Gilhool* v. *Muth*, 488 U. S. 815 (1988), on the question whether the EHA abrogates the States' sovereign immunity under the Eleventh Amendment. Compare *David D.* v. *Dartmouth School Committee*, 775 F. 2d 411 (CA1 1985) (finding abrogation), with *Gary A.* v. *New Trier High School Dist. No. 203*, 796 F. 2d 940 (CA7 1986); *Doe* v. *Maher*, 793 F. 2d 1470 (CA9 1986); and *Miener* v. *Missouri*, 673 F. 2d 969 (CA8 1982) (finding no abrogation). We now reverse.

## II

We have recognized that Congress, acting in the exercise of its enforcement authority under § 5 of the Fourteenth Amendment,[1] may abrogate the States' Eleventh Amendment immunity. *Fitzpatrick* v. *Bitzer*, 427 U. S. 445, 456 (1976). We have stressed, however, that abrogation of sovereign immunity upsets "the fundamental constitutional balance between the Federal Government and the States," *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 238 (1985), placing a considerable strain on "'[t]he principles of federalism that inform Eleventh Amendment doctrine,'" *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 100 (1984), quoting *Hutto* v. *Finney*, 437 U. S. 678, 691 (1978). To temper Congress' acknowledged powers of

---

[1] Petitioner concedes that the EHA was enacted pursuant to Congress' authority under § 5 of the Fourteenth Amendment, and that Congress has the power to abrogate the Eleventh Amendment with respect to the Act. Tr. of Oral Arg. 14–15; see *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 244–245, n. 4 (1985). We decide the case on these assumptions.

abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure, we have applied a simple but stringent test: "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." *Atascadero, supra,* at 242.

In concluding that the EHA contains the requisite clear statement of congressional intent, the Court of Appeals rested principally on three textual provisions. The court first cited the Act's preamble, which states Congress' finding that "it is in the national interest that the Federal government assist State and local efforts to provide programs to meet the education needs of handicapped children in order to assure equal protection of the law." 20 U. S. C. § 1400(b)(9). Second, and most important for the Court of Appeals, was the Act's judicial review provision, which permits parties aggrieved by the administrative process to "bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." 20 U. S. C. § 1415(e)(2). Finally, the Court of Appeals pointed to a 1986 amendment to the EHA, which states that the Act's provision for a reduction of attorney's fees shall not apply "if the court finds that the State or local educational agency unreasonably protracted the final resolution of the action or proceeding or there was a violation of this section." 20 U. S. C. § 1415(e)(4)(G) (1982 ed., Supp. V). In the view of the Court of Appeals, this amendment represented an express statement of Congress' understanding that States can be parties in civil actions brought under the EHA.

Respondent supplements these points with some nontextual arguments. Most notably, respondent argues that abrogation is "necessary . . . to achieve the EHA's goals," Brief for Respondent Muth 37; and that the 1986 amendments to another statute, the Rehabilitation Act, 100 Stat.

1845, 42 U. S. C. § 2000d-7 (1982 ed., Supp. IV), expressly abrogate state immunity from suits brought under the EHA, Brief for Respondent Muth 30. In connection with the latter argument, respondent recognizes that the Rehabilitation Act amendments expressly apply only to "violations that occur in whole or in part after October 21, 1986." 42 U. S. C. § 2000d-7(b) (1982 ed., Supp. IV). Respondent contends, however, that "[a]lthough the amendment became effective after Muth initially filed suit, . . . the overwhelming support for the amendment shows that it reflects Congress' intent in originally enacting the EHA [in 1975]." Brief for Respondent Muth 32, n. 48.[2]

We turn first to respondent's nontextual arguments, because they are the easier to dismiss. It is far from certain that the EHA cannot function if the States retain immunity, or that the 1986 amendments to the Rehabilitation Act are a useful guide to congressional intent in 1975. Indeed, the language of the 1986 amendments to the Rehabilitation Act appears to cut against respondent. Without intending in any way to prejudge the Rehabilitation Act amendments, we note that a comparison of the language in the amendments with the language of the EHA serves only to underscore the difference in the two statutes, and the absence of any clear statement of abrogation in the EHA. The amendments to the Rehabilitation Act read in pertinent part:

> "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of [several enumerated provisions] or the provisions of any other Federal statute prohibiting discrimination by recipients of

---

[2] Respondent also offers us another avenue to affirm the result below, which is to overrule the longstanding holding of *Hans* v. *Louisiana*, 134 U. S. 1 (1890), that an unconsenting State is immune from liability for damages in a suit brought in federal court by one of its own citizens. We decline this most recent invitation to overrule our opinion in *Hans*.

Federal financial assistance." 42 U. S. C. § 2000d–7(a) (1) (1982 ed., Supp. IV).

When measured against such explicit consideration of abrogation of the Eleventh Amendment, the EHA's treatment of the question appears ambiguous at best.

More importantly, however, respondent's contentions are beside the point. Our opinion in *Atascadero* should have left no doubt that we will conclude Congress intended to abrogate sovereign immunity only if its intention is "unmistakably clear in the language of the statute." *Atascadero*, 473 U. S., at 242. Lest *Atascadero* be thought to contain any ambiguity, we reaffirm today that in this area of the law, evidence of congressional intent must be both unequivocal and textual. Respondent's evidence is neither. In particular, we reject the approach of the Court of Appeals, according to which, "[w]hile the text of the federal legislation must bear evidence of such an intention, the legislative history may still be used as a resource in determining whether Congress' intention to lift the bar has been made sufficiently manifest." 839 F. 2d, at 128. Legislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment. If Congress' intention is "unmistakably clear in the language of the statute," recourse to legislative history will be unnecessary; if Congress' intention is not unmistakably clear, recourse to legislative history will be futile, because by definition the rule of *Atascadero* will not be met.

The gist of JUSTICE BRENNAN's dissent's argument appears to be that application of the governing law in *Atascadero* is unfair in this case. The dissent complains that we "resor[t] to an interpretative standard that Congress could have anticipated only with the aid of a particularly effective crystal ball." *Post*, at 241. This complaint appears to be premised on an unrealistic and cynical view of the legislative process. We find it difficult to believe that the 94th Congress, taking careful stock of the state of Eleventh Amendment law, decided it

would drop coy hints but stop short of making its intention manifest. Rather, the salient point in our view is that it cannot be said with perfect confidence that Congress in fact intended in 1975 to abrogate sovereign immunity, and imperfect confidence will not suffice given the special constitutional concerns in this area. Cf. *Johnson* v. *Robison*, 415 U. S. 361, 373–374 (1974) (federal statute will not be construed to preclude judicial review of constitutional challenges absent clear and convincing evidence of congressional intent).

We now turn our attention to the proper focus of an inquiry into congressional abrogation of sovereign immunity, the language of the statute. We cannot agree that the textual provisions on which the Court of Appeals relied, or any other provisions of the EHA, demonstrate with unmistakable clarity that Congress intended to abrogate the States' immunity from suit. The EHA makes no reference whatsoever to either the Eleventh Amendment or the States' sovereign immunity. Cf. *supra*, at 228. Nor does any provision cited by the Court of Appeals address abrogation in even oblique terms, much less with the clarity *Atascadero* requires. The general statement of legislative purpose in the Act's preamble simply has nothing to do with the States' sovereign immunity. The 1986 amendment to the EHA deals only with attorney's fees, and does not alter or speak to what parties are subject to suit. Respondent conceded as much at oral argument, acknowledging that "the 1986 EHA Amendments . . . are not directly relevant [here] because they concerned only attorney's fees." Tr. of Oral Arg. 28. Finally, 20 U. S. C. § 1415(e)(2), the centerpiece of the Court of Appeals' textual analysis, provides judicial review for aggrieved parties, but in no way intimates that the States' sovereign immunity is abrogated. As we made plain in *Atascadero:* "A general authorization for suit in federal court is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." 473 U. S., at 246.

232

At its core, respondent's attempt to distinguish this case from *Atascadero* appears to reduce to the proposition that the EHA "is replete with references to the states," whereas in "*Atascadero* . . . the statutory language at issue did not include mention of states." Brief for Respondent Muth 32–33. We recognize that the EHA's frequent reference to the States, and its delineation of the States' important role in securing an appropriate education for handicapped children, make the States, along with local agencies, logical defendants in suits alleging violations of the EHA. This statutory structure lends force to the inference that the States were intended to be subject to damages actions for violations of the EHA. But such a permissible inference, whatever its logical force, would remain just that: a permissible inference. It would not be the unequivocal declaration which, we reaffirm today, is necessary before we will determine that Congress intended to exercise its powers of abrogation.

## III

We hold that the statutory language of the EHA does not evince an unmistakably clear intention to abrogate the States' constitutionally secured immunity from suit.[3] The Eleventh Amendment bars respondent's attempt to collect tuition reimbursement from the Commonwealth of Pennsylvania. The judgment of the Court of Appeals is reversed, and the case is remanded for proceedings consistent with this opinion.

*It is so ordered.*

---

[3] Our grant of certiorari also embraced the question whether the EHA precluded petitioner from hearing administrative appeals. Since we conclude that the Commonwealth is not subject to suit under the EHA, and since the school district did not petition for review of the Court of Appeals decision, we have no occasion to reach this question.

After oral argument, respondent filed a motion to remand this suit to the District Court for consolidation with another related action. In light of our disposition today, respondent's motion is denied.

JUSTICE SCALIA, concurring.

I join the opinion of the Court, with the understanding that its reasoning does not preclude congressional elimination of sovereign immunity in statutory text that clearly subjects States to suit for monetary damages, though without explicit reference to state sovereign immunity or the Eleventh Amendment.

JUSTICE BRENNAN, with whom JUSTICE MARSHALL, JUSTICE BLACKMUN, and JUSTICE STEVENS join, dissenting.

I respectfully dissent from the Court's holding that the Commonwealth of Pennsylvania is immune from suit in the federal courts for violations of the Education of the Handicapped Act (EHA), 20 U. S. C. § 1400 *et seq.* (1982 ed. and Supp. V). For reasons I have set out elsewhere, see *Welch* v. *Texas Dept. of Highways and Public Transportation*, 483 U. S. 468, 509–511 (1987) (BRENNAN, J., dissenting); *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234, 258–302 (1985) (BRENNAN, J., dissenting), I would accept respondent Muth's invitation to overrule *Hans* v. *Louisiana*, 134 U. S. 1 (1890), as that case has been interpreted in this Court's recent decisions. Even if I did not hold that view, I would nevertheless affirm the decision of the Court of Appeals on the ground that Congress in the EHA abrogated state immunity.

I

Applying the standard method for ascertaining congressional intent, I conclude, with the Court of Appeals, that "[t]he text of EHA and its legislative history leave no doubt that Congress intended to abrogate the 11th amendment immunity of the states." *Muth* v. *Central Bucks School Dist.*, 839 F. 2d 113, 128 (CA3 1988).

The EHA imposes substantial obligations on the States, as well as on local education authorities, as might be expected in an Act authorizing federal financial aid "to assist States and localities to provide for the education of all handicapped chil-

dren." 20 U. S. C. § 1400(c). To be eligible for federal assistance, a State must develop a plan for the education of all handicapped children and establish the procedural safeguards mandated in § 1415. §§ 1412(2), (5). It is the state educational agency that is "responsible for assuring that the requirements of [EHA Subchapter II, dealing with federal assistance for education of handicapped children] are carried out and that all educational programs for handicapped children within the State, including all such programs administered by any other State or local agency, [are] under the general supervision of the persons responsible for educational programs for handicapped children in the State educational agency." § 1412(6). See *Smith* v. *Robinson*, 468 U. S. 992, 1010 (1984) ("The responsibility for providing the required education remains on the States"); *Board of Education of Hendrick Hudson Central School Dist.* v. *Rowley*, 458 U. S. 176, 182–183 (1982).

In accord with this overarching responsibility placed upon the States, the EHA contemplates that in a number of situations where a local education authority cannot or will not provide appropriate educational services to the handicapped, the State will do so directly. See 20 U. S. C. § 1411(c)(4)(A)(ii) (State to assure provision of services where local authority barred from receiving federal funds because it has failed to submit a proper application); § 1414(d) (State "to provide special education and related services directly to handicapped children residing in the area served by [a] local educational agency" that is unable or unwilling to establish or maintain programs, or to be merged with other local agencies to enable it to do so, or that has "handicapped children who can best be served by a regional or State center"). And in any event, where a local education authority would be entitled to less than $7,500 in EHA funding for a fiscal year, the State may not distribute the funds, but must use the funds itself to ensure provision of appropriate services. §§ 1411(c)(4)(A)(i),

(c)(4)(B). Moreover, a State may choose to administer up to 25 percent of its federal funding itself, rather than distributing these funds to local education authorities, and use such funds to provide direct services to the handicapped. §§ 1411(c)(1), (c)(2).

"[T]he EHA confers upon disabled students an *enforceable* substantive right to public education in participating States and conditions federal financial assistance upon a State's compliance with the substantive and procedural goals of the Act." *Honig* v. *Doe*, 484 U. S. 305, 310 (1988) (emphasis added; citation omitted). See also *Smith* v. *Robinson, supra,* at 1010. Thus, § 1415(e)(2) provides that "any party aggrieved by the findings and decision [made in an administrative process] shall have the right to bring a civil action . . . in any State court of competent jurisdiction or in a district court of the United States without regard to the amount in controversy." This provision makes no distinction between civil actions based upon the type of relief sought and hence plainly contemplates tuition-reimbursement actions. See *School Committee of Burlington* v. *Department of Education of Massachusetts,* 471 U. S. 359 (1985). In light of the States' pervasive role under the EHA, and the clarity with which the statute imposes both procedural and substantive obligations on the States, I have no trouble in inferring from the text of the EHA that "Congress intended that the state should be named as an opposing party, if not the sole party, to [a] proceeding" brought under § 1415(e)(2), whatever remedy is sought, and that Congress thereby abrogated Eleventh Amendment immunity from suit in federal court. *David D.* v. *Dartmouth School Comm.,* 775 F. 2d 411, 422 (CA1 1985), cert. denied, 475 U. S. 1140 (1986). Indeed, in those situations where a State has elected to provide educational services to the handicapped directly, or where under the EHA it is required to provide direct services, the State would appear

to be the only proper defendant in a federal action to enforce
EHA rights.[1]

This solely textually based interpretation of the EHA is
supported by the statute's legislative history. Senator Wil-
liams, a primary author of the EHA, explained to Congress
that, under the Act,

> "it should be clear that a parent or guardian may present
> a complaint *alleging that a State* or local educational
> agency has refused to provide services to which a child
> may be entitled or *alleging that a State* or local educa-
> tional agency has erroneously classified a child as a
> handicapped child." 121 Cong. Rec. 37415 (1975) (em-
> phasis added).

In addition, he emphasized that "any party aggrieved by the
findings and decision rendered in the due process hearing o[r]
the State educational agency review of such hearing shall
have the right to bring a civil action *with respect to the origi-
nal complaint*," *id.*, at 37416 (emphasis added), that is, with
respect to the administrative complaint, which of course may
allege EHA violations by the State.[2] The text and legisla-

---

[1] Moreover, it is not even clear that in those situations where the State
is the only proper defendant, an action could always be brought against the
State even in *state* court; for in *Will* v. *Michigan Dept. of State Police,*
*ante,* at 66, the Court seems to suggest that the very same rule of interpre-
tation it applies here to decide whether Eleventh Amendment immunity is
abrogated is also to be used to determine whether a federal statute re-
quires a State to allow itself to be sued in state court. See *ante,* at 76
(BRENNAN, J., dissenting). If the EHA does not guarantee that the State
can be sued *somewhere,* then our previous statements that the statute pro-
vides enforceable rights are a mockery.

[2] The view that Congress believed it had abrogated state immunity in
the EHA is confirmed bý the legislative history of the Handicapped Chil-
dren's Protection Act of 1985. Congress complained that "[c]ongressional
intent was ignored by the U. S. Supreme Court when . . . it handed down
its decision in *Smith* v. *Robinson,* 468 U. S. 992 (1984)," where the Court
held that "'the EHA repealed the availability of sections 504 [of the Re-
habilitation Act of 1973] and 1983 [of Title 42] to individuals seeking a free
appropriate public education,'" so that such litigants could no longer obtain

tive history of the EHA thus make it unmistakably clear that Congress there intended to abrogate state immunity from suit.

## II

The Court does not seem to disagree with this analysis of actual congressional intent. Even without benefit of reference to the legislative history that confirms the obvious interpretation of the text and makes Congress' purpose undeniably clear—history spurned by the Court because it has devised in this case a novel rule that "[l]egislative history generally will be irrelevant to a judicial inquiry into whether Congress intended to abrogate the Eleventh Amendment," *ante*, at 230—the Court is able to

> "recognize that the EHA's frequent reference to the States, and its delineation of the States' important role in securing an appropriate education for handicapped children, make the States, along with local agencies, logical defendants in suits alleging violations of the EHA. This statutory structure lends force to the inference that the States were intended to be subject to damages actions for violations of the EHA." *Ante*, at 232.

Nevertheless, although Congress did intend to abrogate the States' immunity from suit, the Court refuses to give effect to this intention because it was not, in the Court's view, "unequivocal and textual." *Ante*, at 230.

---

attorney's fees. H. R. Rep. No. 99–296, p. 4 (1985) (quoting *Smith, supra*, at 1030 (BRENNAN, J., dissenting). To correct this error, Congress enacted an amendment, codified at 20 U. S. C. § 1415(e)(4) (1982 ed., Supp. V), providing for the award of attorney's fees under the EHA. The statement in the House Report on this amendment that "[i]n some actions or proceedings in which the parents or guardian prevail, more than one local *or State agency* may be named as a respondent," and that in such cases, "it is expected that the court will apportion the award of attorneys' fees and other expense based on the relative culpability of the agencies," H. R. Rep. No. 99–296, at 6, clearly demonstrates a belief that Congress had abrogated Eleventh Amendment immunity in the EHA.

I dispute the Court's conclusion that the text of the EHA is equivocal. To my mind, immunity is "unequivocally" textually abrogated when state amenability to suit is the logical inference from the language and structure of the text. Cf. *Edelman* v. *Jordan*, 415 U. S. 651, 673 (1974) (a clear declaration of a State's consent to suit in federal court does not require "'express language,'" but may be found in "'overwhelming implications from the text [that] leave no room for any other reasonable construction,'" quoting *Murray* v. *Wilson Distilling Co.*, 213 U. S. 151, 171 (1909)). The Court reaches the conclusion it does only because it requires *more* than an unequivocal text. In doing so, the Court is far removed from any real concern to discern a "clear and manifest" statement of congressional intent, *Rice* v. *Santa Fe Elevator Corp.*, 331 U. S. 218, 230 (1947), which is all that the Court has otherwise looked for when inquiring into the meaning of congressional action, even "[i]n traditionally sensitive areas, such as legislation affecting the federal balance," *United States* v. *Bass*, 404 U. S. 336, 349 (1971).

Were the Court in fact concerned with Congress' intent it could not have adopted the strict drafting regulations it devises today, ruling out resort to legislative history and apparently also barring inferential reasoning from text and structure. The Court's justification for such a rule is that abrogation of immunity "upsets 'the fundamental constitutional balance between the Federal Government and the States,' . . . placing considerable strain on '[t]he principles of federalism that inform Eleventh Amendment doctrine,'" and that a "stringent test" is necessary "[t]o temper Congress' acknowledged powers of abrogation with due concern for the Eleventh Amendment's role as an essential component of our constitutional structure." *Ante*, at 227–228. I maintain that the Court makes one very basic error here, for "[t]here simply is no constitutional principle of state sovereign immunity." *Atascadero*, 473 U. S., at 259 (BRENNAN, J., dissenting). But quite apart from that, the Court has never explained

why it is that the constitutional principle it has created should require a novel approach to ascertaining congressional intent. As I said in *Atascadero*, "special rules of statutory drafting are not justified (nor are they justifiable) as efforts to determine the genuine intent of Congress; no reason has been advanced why ordinary canons of statutory construction would be inadequate to ascertain the intent of Congress." *Id.*, at 254. I entirely fail to see, for example, why the "clear and manifest purpose of Congress" to pre-empt under Article VI "the historic police powers of the States," *Rice, supra,* at 230, may be found in so many and various ways, while the Court in the Eleventh Amendment context insists on setting up ever-tighter drafting regulations that Congress must have followed (though Congress could not have been aware of such requirements when it acted) in order to abrogate immunity. A genuine concern to identify Congress' purpose would lead the Court to consider both the logical inferences to be drawn from the text and structure of the EHA, cf. *Edelman* v. *Jordan, supra,* at 673, *and* the statute's legislative history, see *Employees* v. *Missouri Dept. of Public Health and Welfare,* 411 U. S. 279, 283–285 (1973) (examining legislative history in order to determine whether Congress abrogated Eleventh Amendment immunity), in deciding whether Congress intended to subject States to suit in federal court.

Though the special and strict drafting regulations the Court has now foisted on Congress are unjustifiable, still worse is the Court's retroactive application of these new rules. It would be one thing to tell Congress how in the future the Court will measure Congress' intent. That at least would ensure that Congress and this Court were operating under the same rules at the same time. But it makes no sense whatsoever to test congressional intent using a set of interpretative rules that Congress could not conceivably have foreseen at the time it acted—rules altogether different from, and much more stringent than, those with which Congress, reasonably relying upon this Court's opinions, believed itself

to be working. See *Atascadero, supra,* at 255, n. 7 (BREN-NAN, J., dissenting). The effect of retroactively applying the Court's peculiar rule will be to override congressional intent to abrogate immunity, though such intent was absolutely clear under principles of statutory interpretation established at the time of enactment. Retroactive application of new drafting regulations in such circumstances is simply unprincipled. Cf. *Welch,* 483 U. S., at 496 (SCALIA, J., concurring in part and concurring in judgment) (where Congress has enacted statutes based on an assumption reasonably derived from our cases, "[e]ven if we were now to find that assumption to have been wrong, we could not, in reason, interpret the statutes as though the assumption never existed").

Congress has already had cause to complain of the Court's changing its interpretative rules in midcourse. After the Court held in *Atascadero* that § 504 of the Rehabilitation Act of 1973, 29 U. S. C. § 794, contained no "unmistakable language" abrogating Eleventh Amendment immunity, 473 U. S., at 243, Congress in 1986 enacted an amendment to the Act providing:

> "A State shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal court for a violation of [enumerated provisions of the Rehabilitation Act] or the provisions of any other Federal statute prohibiting discrimination by recipients of Federal financial assistance." 42 U. S. C. § 2000d-7(a)(1) (1982 ed., Supp. IV).

Congress enacted this provision, the Senate Conference Report tells us, because "[t]he Supreme Court's decision [in *Atascadero*] misinterpreted congressional intent. Such a gap in Section 504 coverage was never intended. It would be inequitable for Section 504 to mandate state compliance with its provisions and yet deny litigants the right to enforce their rights in Federal courts when State or State agency actions are in issue." S. Conf. Rep. No. 99-388, pp. 27-28 (1986). See also 132 Cong. Rec. 28623 (1986) (amendment

"eliminate[s] the court-made barrier to effectuating congressional intent that the holding in the Atascadero case so unwisely has raised") (Sen. Cranston, a principal author of § 504 of the 1973 Act).   Had the Court followed the usual rules for determining legislative intent, as Congress in 1973 had every reason to expect it would, the Court could not have fallen into this error.   See *Atascadero*, 473 U. S., at 248–252 (BRENNAN, J., dissenting) (examining the text, structure, and legislative history of § 504 to conclude that Congress intended that the States be amenable to suit in federal court).

It is perfectly clear that again today the Court ignores Congress' actual intent to abrogate state immunity—an intent that is even plainer here than in the case of § 504, which lacked the EHA's frequent reference to the obligations of States—instead resorting to an interpretative standard that Congress could have anticipated only with the aid of a particularly effective crystal ball.   When § 1415 was enacted in its present form in 1975, *Edelman* v. *Jordan*, 415 U. S. 651 (1974), and *Employees* v. *Missouri Dept. of Public Health and Welfare, supra,* established that this Court would consider legislative history and make inferences from text and structure in determining whether Congress intended to abrogate Eleventh Amendment immunity.   Indeed, in *Quern* v. *Jordan*, 440 U. S. 332, 342–345 (1979), the Court evidently remained of the view that legislative history might be taken into account.   Cf. *Hutto* v. *Finney*, 437 U. S. 678, 693–694 (1978).   And later still, in *Pennhurst State School and Hospital* v. *Halderman*, 465 U. S. 89, 99 (1984), the Court still was requiring only "an unequivocal expression of congressional intent," and citing cases in support—*Edelman* and *Quern*—that discuss legislative history in assessing whether Congress intended to abrogate immunity.   Obviously, there was no rule in 1975 of the sort the Court has devised in this case, and I fail to understand what theory it is that justifies

the Court now gauging the 94th Congress' intent by using such a rule.[3]

## III

Though I would hold that Pennsylvania is not immune from suit in federal court for breaches of its obligations under the EHA, I find it unnecessary to go on to consider the second question upon which certiorari was granted: whether the Court of Appeals erred in ruling that Pennsylvania's secretary of education is precluded from deciding special education administrative appeals under § 1415(c) because he is an employee of the Commonwealth. There was an alternative ground for the Court of Appeals' judgment against Pennsylvania—that because of the secretary's remand to a hearing officer following respondent's administrative appeal, respondent was deprived of the timely "final" judgment to which he was entitled under 20 U. S. C. § 1415(e) and 34 CFR § 300.512 (1988). 839 F. 2d, at 124–125. Petitioner's predecessor did not seek review of the Court of Appeals' decision on this alternative ground, which appears adequate to support the judgment below, and no purpose would be served by our considering whether the secretary's participation in the appeal was a violation of the EHA's procedural requirements. I would thus affirm the judgment below.

---

[3] I can only express amazement at the Court's statement that "a comparison of the language in the [Rehabilitation Act] amendments with the language of the EHA serves only to underscore the difference in the two statutes," *ante*, at 229, as if the omission from the EHA of the Rehabilitation Act amendments' provision that "[a] State shall not be immune under the Eleventh Amendment" actually tells us something about Congress' intent when it enacted the EHA. The 1986 amendment was a response to *Atascadero*, tailored to overrule a decision that had misinterpreted Congress' intent in the Rehabilitation Act of 1973 to abrogate state immunity. If Congress' reaction to *Atascadero* tells us anything, it is that Congress prior to that decision believed it could effectively express its intent to abrogate immunity *without* resorting to the degree of textual clarity the Court demands in this case.

JUSTICE BLACKMUN, dissenting.

I join JUSTICE BRENNAN's opinion because he correctly ascertains the unmistakable intent of Congress to subject state agencies to liability for tuition-reimbursement awards under the Education of the Handicapped Act, 20 U. S. C. § 1415(e)(2). See also *School Committee of Burlington* v. *Department of Education of Massachusetts*, 471 U. S. 359 (1985). Indeed, as JUSTICE BRENNAN convincingly demonstrates, this statute passes even the stringent test set forth in *Atascadero State Hospital* v. *Scanlon*, 473 U. S. 234 (1985). It is only by resorting to a stricter standard yet that the Court is able to reach the result that it does here. Because the Court never should have started down this road, it certainly should not take today's additional step.

JUSTICE STEVENS, dissenting.

While I join JUSTICE BRENNAN's dissent, I adhere to my view that a "statute cannot amend the Constitution." *Pennsylvania* v. *Union Gas Co.*, *ante*, at 24 (concurring opinion). Because this case deals with the judicially created doctrine of sovereign immunity rather than the real Eleventh Amendment's limitation on federal judicial power, the congressional decision to confer jurisdiction on the federal courts must prevail.