**Annabelle LIPSETT, Plaintiff,**

*v.*

**UNIVERSITY OF PUERTO RICO; Pedro Juan Santiago Borrero, individually and in his capacity as Dean of the School of Medicine of the University of Puerto Rico; Jose R. Gonzalez Inclan, individually and in his capacity as Acting Director of the Department of Surgery and as Acting Director of the Surgery Residency Training Program; Gumersindo Blanco, individually and in his capacity as Director of the Department of Surgery and Chairman of the University of Puerto Rico and Affiliated Hospitals Residency Training Program, Ernesto Rivé Mora, individually and in his capacity as Director of the Training Program of the San Juan Veterans Administration Hospital, Defendants.**

**Civ. No. 83–1516 (JP).**

United States District Court,
D. Puerto Rico.

Sept. 24, 1990.

Charles S. Hey Maestre, José Antonio Lugo, Judith Berkan, Río Piedras, P.R., for plaintiff.

Isabel Muñoz Acosta, Asst. U.S. Atty., Hato Rey, P.R., for co-defendant Ernesto Rivé Mora.

Rubén Nigaglioni, James D. Noel, III, Ledesma, Palou & Miranda, Hato Rey, P.R., for co-defendant University of P.R., et al.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it the University of Puerto Rico's (UPR) Motion for Summary Judgment. Defendant claims that Title IX of the Education Amendments of 1972 ("Title IX"), 20 U.S.C. §§ 1681–1688, does not provide a private cause of action for damages against it because of sovereign immunity. Plaintiff has opposed this motion, arguing that Title IX provides her with a private cause of action for damages against the University. For the reasons stated below, we find that the University cannot be held liable for damages, but can be held liable to plaintiff for injunctive relief.[1]

### I. BRIEF STATEMENT OF FACTS AND PROCEDURAL HISTORY

This case has been pending over the course of seven years and several published opinions. *See Lipsett v. University of Puerto Rico*, 576 F.Supp. 1217 (D.P.R. 1983); *Lipsett v. University of Puerto Rico*, 637 F.Supp. 789 (D.P.R.1986); *Lip-*

---

1. Because we find the University immune under the Eleventh Amendment, we need not address

sett v. Rivé Mora, 669 F.Supp. 1188 (D.P.R. 1987), rev'd and remanded in part, Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir.1988). In short, this action was brought by a female surgery intern in the University of Puerto Rico's School of Medicine. The plaintiff sought damages and declaratory and injunctive relief against the UPR's School of Medicine and several of its officers. She claimed that while she was attending the General Surgery Residency Training Program at UPR, she was subjected to unconstitutional sex discrimination. Her specific claims were that she was sexually harassed while she was an intern in the Surgery Program, and that she was not promoted to the fourth year residency level of the five-year Surgery Program because of her sex.

After the district court granted summary judgment in favor of the defendants, Lipsett, 637 F.Supp. at 813, the plaintiff appealed. The First Circuit reversed and remanded the case for a trial on the merits. Lipsett, 864 F.2d at 915. Subsequent to the remand, the defendants filed several summary judgment motions.[2] On May 24, 1990, the case proceeded to trial, at which time this Court orally granted the University's motion based on sovereign immunity. On June 20, 1990, the jury returned a $525,000 verdict in favor of the plaintiff, concluding that several of the defendants had sexually discriminated against the plaintiff.

## II. DISCUSSION

The First Circuit has previously held that in an action brought under section 1983,

[t]he extent and nature of the Commonwealth of Puerto Rico's financial support for the University of Puerto Rico and the fact that the Commonwealth appoints the governing body of the University con-

vinces us that the University is sufficiently an "arm" of the state ... to be immune from damages under the eleventh amendment. (Citations omitted.)

Perez v. Rodríguez Bou, 575 F.2d 21, 25 (1st Cir.1978), rem'd and appealed on other grounds, 600 F.2d 1 (1st Cir.1979). In the Lipsett decision, the First Circuit declined to express any opinion on the issue of whether the University is entitled to sovereign immunity as an instrumentality of the Commonwealth of Puerto Rico for purposes of Title IX liability. 864 F.2d at 885. After carefully examining the issue, we conclude that the UPR is immune from a damages suit under Title IX since Title IX does not abrogate the eleventh amendment.

■ The eleventh amendment provides that "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of Any Foreign State." The Supreme Court has used the principles of sovereign immunity to interpret this amendment to "establish that 'an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state.'" Port Authority Trans–Hudson Corp. v. Feeney, 495 U.S. ——, ——, 110 S.Ct. 1868, 1872, 109 L.Ed.2d 264, 271 (1990) (quoting Pennhurst State School and Hospital v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (remaining citations omitted)) ("Pennhurst II"). However, this immunity barring suit is not absolute. States may waive immunity and consent to be sued in federal court. Id. Also, Congress may abrogate states' sovereign immunity. See, e.g., Dellmuth v. Muth, 491 U.S. ——, 109 S.Ct. 2397, 105

the issue of whether monetary damages are available in a private action brought to enforce Title IX, an issue which the Supreme Court has not yet decided. See Lipsett v. University of Puerto Rico, 864 F.2d 881, 884 n. 3 (1st Cir. 1988); compare Cannon v. University of Chicago, 710 F.2d 351 (7th Cir.1983) (damage remedy precluded under Title IX) with Miener v. Missouri, 673 F.2d 969 (8th Cir.), cert. denied, 459

U.S. 909, 103 S.Ct. 215, 74 L.Ed.2d 171 (1982) with Beehler v. Jeffes, 664 F.Supp. 931 (M.D.Pa. 1986) (finding money damages as available remedy under Title IX).

2. For a more thorough discussion of the procedural history of the case, see Lipsett v. University of Puerto Rico, 864 F.2d 881 (1st Cir.1988).

L.Ed.2d 181 (1989). Therefore, in order to be held liable under Title IX, the UPR, as an arm of the state, must have waived its sovereign immunity, or Congress must have abrogated its immunity when it enacted Title IX.

■ The exceptions to eleventh amendment immunity are well-established. Because the eleventh amendment involves the "fundamental constitutional balance" between the states and the federal government, the Supreme Court has established rigorous standards dictating when these exceptions apply. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 238–39, 105 S.Ct. 3142, 3145–3146, 87 L.Ed.2d 171, 178 (1985), *reh'g denied*, 473 U.S. 926, 106 S.Ct. 18, 87 L.Ed.2d 696 (1985). In the case of a state's waiver of its immunity, the statute or constitutional provision must specify the state's intention to subject itself to suit in *federal* court. *Id.*, 473 U.S. at 241, 105 S.Ct. at 3146. The Supreme Court will recognize the state's waiver of immunity "only where stated by the most express language or by such overwhelming implication from the text as [will] leave no room for any other reasonable construction." *Port Authority Trans–Hudson*, 495 U.S. at ——, 110 S.Ct. at 1873, 109 L.Ed.2d at 272–73 (citing *Atascadero*, 473 U.S. at 239–40, 105 S.Ct. at 3146).

■ If Congress decides to abrogate a state's immunity from suit in federal court, it may do so "only by making its intention unmistakably clear in the language of the statute." *Atascadero*, 473 U.S. at 242, 105 S.Ct. at 3147. *See also Pennhurst II*, 465 U.S. at 99, 104 S.Ct. at 907; *Quern v. Jordan*, 440 U.S. 332, 342–345, 99 S.Ct. 1139, 1145–1147, 59 L.Ed.2d 358 (1979). Congressional power to abrogate a state's immunity indicates a change in the normal constitutional balance between the states and the federal government. *Atascadero*, 473 U.S. at 243, 105 S.Ct. at 3147. Therefore, the evidence of congressional intent to abrogate "must be both unequivocal and textual." *Dellmuth*, 491 U.S. at ——, 109 S.Ct. at 2401, 105 L.Ed.2d at 189.

■ In the case of Title IX, the language of the statute states that:

> No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance . . .

20 U.S.C. § 1681.

The statute makes no reference to either the eleventh amendment or a states' sovereign immunity. *See Dellmuth*, 491 U.S. at ——, 109 S.Ct. at 2402, 105 L.Ed.2d at 190. The statutory remedy for violations of Title IX providing for the termination or refusal to grant or continue federal assistance applies to "*any* education program or activity" which receives a grant, loan, or contract advancing federal financial assistance. 20 U.S.C. § 1682. Plaintiff does not claim that UPR is not a recipient of federal assistance under Title IX. Consequently, the language of Title IX does not reveal the unmistakably clear congressional intent required to abrogate the eleventh amendment bar to suits ·against the states.

Plaintiff contends that Title IX, as part of the broader civil rights enforcement scheme which includes Titles VI and VII, abrogates states' immunity from suit because it was enacted pursuant to § 5 of the fourteenth amendment, which gives Congress the power to subject unconsenting states to federal court jurisdiction. *See Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). In *Fitzpatrick*, the Supreme Court concluded that the 1972 Amendments to Title VII, clearly authorizing federal courts to award money damages in favor of a private plaintiff against a state government, effectively abrogates the states' sovereign immunity. 427 U.S. at 456, 96 S.Ct. at 2671. However, in *Atascadero*, the Supreme Court decided that § 504 of the Rehabilitation Act of 1973, a statutory analogue to Title IX,[3] was not an abrogation of sovereign immunity, even though both parties had conceded that the statute was enacted pursuant to the

3. Title IX was patterned after Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d et

fourteenth amendment. The Court reached this conclusion because the statutory language of § 504, which is similar to the language of Title IX,[4] was insufficient to abrogate the eleventh amendment. 473 U.S. at 245 n. 4, 105 S.Ct. at 3148 n. 4.

We hold that the language of Title IX does not satisfy the strict "unmistakably clear" standard set forth in *Atascadero.* Therefore, regardless of whether the statute was enacted pursuant to Congress' fourteenth amendment powers, it does not demonstrate the clear intention needed to abrogate the states' immunity from suit. *See Lipsett,* 864 F.2d at 885 n. 6 ("there is in Title IX, unlike in Title VII, no *express* congressional authorization of private damages actions.") (emphasis in original).

■ Thus, defendant University of Puerto Rico is immune from any retrospective claims for monetary damages, whether equitable or legal, since a private action in federal court seeking to impose liability to be paid from the state public treasury is barred by the eleventh amendment. *See, e.g., Quern v. Jordan,* 440 U.S. at 337, 99 S.Ct. at 1143; *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662,

*reh'g denied,* 416 U.S. 1000, 94 S.Ct. 2414, 40 L.Ed.2d 777 (1974); *Ford Motor Co. v. Department of Treasury,* 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). However, a federal court can enjoin state officials to conform their future conduct to federal law requirement, even when such an injunction would have an "ancillary effect" on the state treasury. *Quern,* 440 U.S. at 337, 99 S.Ct. at 1143 (citations omitted). Accordingly, the officials of the University can be subject to a prospective injunction or other equitable relief to which the plaintiff may be entitled.

### III. CONCLUSION

Wherefore, in view of the foregoing discussion, we hold that regardless of whether a remedy for damages is available under Title IX, the University of Puerto Rico is immune from such a claim because of the eleventh amendment.

IT IS SO ORDERED.

---

seq. *Cannon v. Univ. of Chicago,* 441 U.S. 677, 694 n. 16, 99 S.Ct. 1946, 1956 n. 16, 60 L.Ed.2d 560, 574 n. 16 (1979). *See also North Haven Bd. of Education v. Bell,* 456 U.S. 512, 514, 102 S.Ct. 1912, 1914, 72 L.Ed.2d 299, 303 (1982). The two statutes use identical language to describe the benefited class, except for the substitution of "sex" in Title IX to replace the words "race, color, or national origin" in Title VI, and both *provide the same administrative mechanism for* terminating federal financial support for institutions committing the prohibited discriminatory acts. *Cannon,* 441 U.S. at 695–96, 99 S.Ct. at 1957–58. Also, the drafters of Title IX explicitly assumed that it would be interpreted and applied as Title VI had been prior to the enactment of Title IX. *Id.*

Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, which prohibits a federally funded state program from discriminating

against a handicapped individual solely on the basis of his or her handicap, is also patterned after Title VI. *School Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 277, 107 S.Ct. 1123, 1129, 94 L.Ed.2d 307 (1987). Moreover, § 505(a)(2) provides that the remedies, procedures, and rights set forth in Title VI shall be available for enforcement of the Rehabilitation Act. 29 U.S.C. § 794a(a)(2) (1985).

4. The Rehabilitation Act of 1973, 29 U.S.C. § 794, provides that:

No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance or under any program activity conducted by any Executive agency or by the United States Postal Service....