B.J. EMBERG and D.H.
Emberg, Plaintiffs,

v.

UNIVERSITY OF MARYLAND UNI-
VERSITY COLLEGE ASIAN
DIVISION, Defendant.

No. CIV. 97–01039DAE.

United States District Court,
D. Hawaii.

April 17, 1998.

Roy K.S. Chang, Shim Tam Kirimitsu Kitamura & Chang, Honolulu, HI, for B. Joan Emberg, D.H. Emberg, plaintiffs.

William W. Watkins, Law Offices of William W. Watkins, Honolulu, HI, Sally L. Swann, Office of the Attorney General, Baltimore, MD, for University of Maryland, University College Asian Division dba University of Maryland Asian Division.

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS

DAVID ALAN EZRA, District Judge.

The court heard Defendant's Motion on April 13, 1998. Roy K.S. Chang, Esq., and Harvey M. Demetrakopoulos, Esq., appeared at the hearing on behalf of Plaintiffs; William W. Watkins, Esq., and Assistant Attorney General Sally L. Swann, appeared at the hearing on behalf of Defendant. After reviewing the motion and the supporting and opposing memoranda, the court GRANTS Defendant's Motion to Dismiss.

### BACKGROUND

Plaintiffs B. Joan Emberg ("B. Emberg") and D.H. Emberg ("D. Emberg") (collectively "Plaintiffs") were employed by Defendant University of Maryland University College Asian Division ("Defendant") in 1994 to teach a program at the United States military base on Kwajalein Island. On March 4, 1994, Plaintiffs were struck by an errant golf ball while they were riding their bikes on a roadway on Kwajalein Island. As a result of the accident B. Emberg suffered a serious brain injury and has been completely disabled and unable to work since November 1995. D. Emberg also suffered injury to his knee as a result of the accident, and he was forced to retire from teaching in order to provide care for his wife.

Plaintiffs filed for workman's compensation benefits with Defendant's carrier, and also filed a claim with the Department of Labor.

As of yet, neither of the claims have been ruled upon, and as of the date of this Order, Plaintiffs have not received any benefits since the accident.

On August 7, 1997, Plaintiffs filed a Complaint in this court for declaratory judgment to declare the rights between the parties as to whether Plaintiffs are entitled to Defense Base Act coverage and benefits under 42 U.S.C. § 1651 et seq., as well as legal damages. On March 16, 1998, Defendant filed a Motion to Dismiss Plaintiffs' Complaint. Plaintiffs filed an Opposition Memorandum on March 25, 1998, and Defendants filed a Reply Memorandum on April 6, 1998.

## DISCUSSION

### I. Eleventh Amendment.

Defendant contends that it is protected by the Eleventh Amendment, and thus cannot be sued in federal court. Defendant argues that the action should be dismissed on this basis. Plaintiffs insist that the Asian Division of the University College, the program in which Plaintiffs were employed, is not an arm of the State of Maryland, and therefore is not protected by sovereign immunity.

■■■ As a general rule states cannot be made a party to a federal suit. *Harris v. Angelina County, Tex.*, 31 F.3d 331, 339 (5th Cir.1994). The Eleventh Amendment reads:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.[1]

The Supreme Court has interpreted this Amendment to signify that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed[.]" *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). Moreover, a plaintiff may not sue a state in either law or equity. *Id.* at 100–101, 104 S.Ct. 900 (citing *Missouri v. Fiske*, 290 U.S. 18, 27, 54 S.Ct. 18, 78 L.Ed. 145 (1933) ("the

Amendment necessarily embraces demands for the enforcement of equitable rights and the prosecution of equitable remedies when those are asserted and prosecuted by an individual against a State")). Reading these two principles together, a suit against a state official that is in fact a suit against a State is barred regardless of whether the plaintiff seeks monetary or injunctive relief. *Id.* at 101–102, 54 S.Ct. 18 (citing *Cory v. White*, 457 U.S. 85, 91, 102 S.Ct. 2325, 72 L.Ed.2d 694 (1982)).

Plaintiffs argue that Defendant is not an arm of the State of Maryland, and thus is unable to obtain protection through the Eleventh Amendment. Plaintiffs assert that the Asian Division of the University College is independent and "is not part of the state-funded University of Maryland[,]" because the overseas division of the University is entirely self-supporting. Plaintiffs' Opp. at 3. According to Plaintiffs, because the Asian Division was not subsidized by state or federal appropriations at the time of Plaintiffs' employment, the Eleventh Amendment cannot be a source of immunity. *Id.* at 4 and 11.

■■■ In *Hale v. State of Arizona*, 993 F.2d 1387, 1399 (9th Cir.1993), the Ninth Circuit explained that the test for determining if a governmental agency is an arm of the state requires the federal court to look to state law. The court must consider, pursuant to state law, "whether a money judgment would be satisfied out of state funds, whether the entity performs central governmental functions, whether the entity may sue or be sued, whether the entity has the power to take property in its own name or only the name of the state and the corporate status of the entity." *Id.* (internal quotations omitted) (citing *Mitchell v. Los Angeles Community College Dist.*, 861 F.2d 198, 201 (9th Cir. 1988)). The central issue however, is whether the state treasury will be affected by a monetary judgment in Plaintiffs' favor.

■■■ Defendant explains that University College is one of the eleven public senior higher education institutions

---

**1.** The Supreme Court has held that this provision bars suits against a state brought by its own citizens, as well as by foreign citizens. *Papasan*  *v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986).

of the State of Maryland that are "constituent institutions" of the University System of Maryland, all of which governed by the Board of Regents of the university System of Maryland.

Defendant's Motion at 6. The Maryland State statutes demonstrate that the University College Asian Division is part of the University system of Maryland, and thus an arm of the State of Maryland.

The University College of the University of Maryland, of which the Asian Division is a part, was established by Maryland Education Code § 13–101. The statute provides that "[t]here is a University College in the University of Maryland which is not a new branch of the University of Maryland." Md. Code Ann., Educ. § 13–101 (West 1998). The statute further describes that University College is required to submit annual financial statements to the Department of Budget and Management, and sets forth that University College may "(1) [p]urchase, lease, or rent motor vehicles for use in overseas programs; and (2)[p]urchase, lease or rent mechanical or electronic data or information processing equipment and related services for its overseas program." *Id.* Thus, the overseas programs, such as Asian Division, are part of the University College in the University of Maryland. The University College is a creation of the Maryland State Legislature, and can only act as is proscribed by state statute. There is nothing in the statute which suggests that the individual overseas programs act independently or that they can own property or enter into leases without the assistance of the University College. Furthermore, Defendant submits that the Asian Division of the University College is not a corporation and does not act independently of the University College.

As further evidence that the University College Asian Division is an arm of the State of Maryland, the Maryland State Government Code § 12–101 includes, as state personnel, "an employee or official of the ... overseas programs of the University College of the University System of Maryland[.]" Md. Ann.Code, State Government § 12–101(a)(2)(v) (West 1998). Hence, under Maryland statutory law, Plaintiffs were employ-

ees of the State of Maryland at the time that they were employed by the University College Asian Division on Kwajalein Island. The statutes provide for absolute immunity under the Maryland Tort Claims Act for those individuals defined as state personnel, acting in their official capacity. *See id.* Md. Ann.Code § 12–105 (West 1998).

Plaintiffs rely on the fact that the Asian Division holds itself out to be "self-supporting," in that it does not obtain any state or federal funding. However, Defendant refers to the Budget of the University of Maryland University College, of which the Asian Division is a part, to show that state appropriations were made in 1992, however no state money was set aside in 1993 and 1994. Exhibit A, Defendant's Reply. Defendant admits that the University College does not always receive state funds, but indicates that it is the constraints on the state budget that forced this result, and not a change in the nature of University College itself.

It is widely accepted that the main emphasis in the evaluation of whether an agency is vested with Eleventh Amendment immunity depends upon whether a judgment against the agency is in effect a judgment against the state itself. Essentially, if the state's purse is directly affected by a judgment against the entity, the entity is likely an arm of the state, and thus protected by the Eleventh Amendment. *See generally Pennhurst,* 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67; *see also, Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (The Eleventh Amendment was enacted to protect state treasuries from suit.). Therefore, whether the state directly provides funding to the University College Asian Division is not the significant issue. If a judgment against Defendant would operate to deplete funds from the Maryland State Treasury, it is likely that the Eleventh Amendment would provide immunity.

Plaintiffs contend that a "judgment against Asian Division would be satisfied out of the proceeds of Asian Division's contract with the United States." Plaintiffs' Opp. at 12. However, Plaintiffs do not provide any support for this contention aside from a faculty handbook which states that the Asian Division is

"self-supporting." *Id.* Without evidence offered by Plaintiffs that the judgment would be satisfied solely by the funds in the Asian Division's budget, the court must look to state law for guidance.

Just as those employed by the overseas programs of the University of Maryland University College are protected by the State's sovereign immunity, so too is the program itself. The University of Maryland University College is created and governed by state statute. It is only provided the authority that the legislature allows it. It is part of the University of Maryland, and its budget is reviewed each year by the Department of Budget and Management for the State of Maryland. *See* Md. Ann.Code Educ. § 13-101 (West 1998). The overseas program was created as part of the University College, and any property or leases used in the overseas programs are purchased by the University College, and not the individual overseas program itself. *See* Md. Ann.Code Educ. § 13-101(e) (West 1998). Additionally, University College, along with the other entities of the University of Maryland, provides a central government function. It "fosters the development of a consolidated system of public higher education, to improve the quality of education, to extend its benefits and to encourage the economical use of the State's resources...." Md.Code Ann., Educ. § 12-101(a) (West 1998).

Maryland Annotated Code, State Finance and Procurement § 9-105(c) provides that "[t]o the extent that funds are available in the State budget, the Treasurer shall provide sufficient self-insurance, purchased insurance, or both to cover the liability of the State and its units and personnel under the Maryland Tort Claims Act." Md.Code Ann., State Fin. & Proc. § 9-105(c) (West 1998). Thus, considering that the University of Maryland University College is a state created and run entity, and the overseas programs are part of that entity, the state Treasurer would be responsible for providing insurance for the liability of the entity. The Treasurer must pay "a unit of the State government for a loss that is covered under § 9-105 ... *without regard to whether the unit is funded wholly or partly from general, special, or*

*federal funds.*" Md.Code Ann., State Fin. & Proc. § 9-107 (West 1998). Therefore, as Defendant argues, even though the University College Asian Division is funded by tuition and relies on federal contracts for money, this does not affect the Treasurer's responsibility to pay the eligible claims out of the State's purse. Given the relevant circumstances, and the statutes discussed above, the court finds that the University of Maryland University College is protected by the Eleventh Amendment, and thus the Asian Division, being an overseas program within University College, is also vested with sovereign immunity.

II. *Abrogation of the Eleventh Amendment.*

█ The Eleventh Amendment may be specifically abrogated by Congress when enacting a federal statute, however Congress's intent must be clear and unequivocal. *See Green v. Mansour,* 474 U.S. 64, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985). The clear statement rule is based upon the Supreme Court's recognition of the important role played by the Eleventh Amendment. *See Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 238-239, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985). Therefore, Congress may abrogate the states' Eleventh Amendment immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute. *See Dellmuth v. Muth,* 491 U.S. 223, 227-228, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989).

█ Plaintiffs assert claims against Defendant based upon the Declaratory Judgment Act, 28 U.S.C. § 2201, the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq., as provided under the Defense Base Act, 42 U.S.C. § 1651, et seq. The Declaratory Judgment Act is a procedural statute, and therefore has no language regarding abrogation of a state's Eleventh Amendment immunity. The Defense Base Act, essentially, incorporates the Longshore and Harbor Worker's Compensation Act, and extends the benefits of the Act to individuals employed at military, air or naval bases of the United States, when there under a contract with the United States to perform, among other things, work related to national

defense. *See* 42 U.S.C. § 1651 (West 1994). However, there is no express and clear language in the Defense Base Act, nor for that matter in the Longshore and Harbor Worker's Compensation Act, that a state's sovereign immunity is abrogated. Thus, absent a clear statement that Congress intended to abrogate Eleventh Amendment immunity, such immunity remains intact, and protects Defendant from suit in federal court.

### III. *Exception to Eleventh Amendment Immunity.*

Plaintiffs insist that there is an "exception," enunciated in *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which allows suits to enjoin state officials from violating federal law. Plaintiffs' Opp. at 17. Plaintiff is correct.

■■■ Where state officials are the named defendants, the Eleventh Amendment bars the suit if " 'the state is the real, substantial party in interest.' " *Pennhurst*, 465 U.S. at 101, 104 S.Ct. 900, (*citing Ford Motor Co. v. Dep't of Treasury of Indiana*, 323 U.S. 459, 464, 65 S.Ct. 347, 89 L.Ed. 389 (1945)). "Thus, '[t]he general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter.' " *Id.* (*citing Hawaii v. Gordon*, 373 U.S. 57, 58, 83 S.Ct. 1052, 10 L.Ed.2d 191 (1963)). The Court has recognized an exception to this general rule: a plaintiff may challenge the constitutionality of a state official's action by seeking prospective injunctive relief. *Id.* 465 U.S. at 102, 104 S.Ct. 900 (*citing Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908)). If the plaintiff asks the federal court to enjoin the official's future unconstitutional conduct, the Eleventh Amendment presents no bar, because unconstitutional actions by state officials cannot be authorized by a state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). However, a plaintiff may not seek retroactive monetary relief against the state official for past allegedly unconstitutional behavior. *Id.* 415 U.S. at 666–667, 94 S.Ct. 1347.

■■■ Simply asking for injunctive relief and not damages will not automatically allow the plaintiff to overcome the dictates of the Eleventh Amendment. The Supreme Court has recognized that the difference between retrospective and prospective relief "will not in many instances be that between day and night." *Papasan*, 478 U.S. at 278, 106 S.Ct. 2932 (*citing Edelman*, 415 U.S. at 667, 94 S.Ct. 1347). Generally, "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred [by the Eleventh Amendment]." *Papasan*, 478 U.S. at 278, 106 S.Ct. 2932. "[r]elief that in essence serves to compensate a party injured in the past by an action of a state official in his official capacity that was illegal under federal law is barred [by the Eleventh Amendment]." *Papasan*, 478 U.S. at 278, 106 S.Ct. 2932.

■■■ Plaintiffs attempt to fall into this exception, however, they have sued an entity of the State of Maryland, and have not alleged claims against a specific state official. It is well settled that a state, or an agency of the state, cannot be sued in federal court for either damages or equitable relief. Consequently, as there is no named state official in the Complaint or elsewhere, that is allegedly violating Plaintiffs' rights under federal law, Plaintiffs' claims cannot fall within this exception. Therefore the Complaint is DISMISSED in its entirety as Defendant is protected from suit in federal court by the Eleventh Amendment.

The court is sympathetic to Plaintiffs. As the court noted on the record, Plaintiffs are put in a rather precarious position. If indeed, as Defendant argues, it is not subject to the requirements of the Defense Base Act because it is an arm of the state, then coverage would solely be derived from a workman's compensation claim. If Plaintiffs are denied workman's compensation coverage because they were not actually working at the time of the injury, then Plaintiffs are left without recovery. While the court recognizes this, it is also clear that the issue of coverage is not properly before the court at this time. Thus, the court DISMISSES Plaintiffs' Complaint, but does so without

prejudice to Plaintiffs bringing suit on this issue at a later date.

## CONCLUSION

For the reasons stated above, the court GRANTS Defendant's Motion to Dismiss based upon the Eleventh Amendment. Plaintiffs' Complaint is DISMISSED WITHOUT PREJUDICE.

IT IS SO ORDERED.