**APPALACHIAN AGENCY FOR SENIOR CITIZENS, et al., Plaintiffs,**

v.

**Wilda FERGUSON, Commissioner, Virginia Department for the Aging, Defendants.**

**Civ. A. No. 88–0123–B.**

United States District Court, W.D. Virginia, Big Stone Gap Division.

Dec. 16, 1988.

Gerald L. Gray, Clintwood, Va., for plaintiffs.

Carol S. Nance, Asst. Atty. Gen., Richmond, Va., for defendants.

**MEMORANDUM OPINION**

GLEN M. WILLIAMS, District Judge.

This case is before the court on Plaintiffs' Motion for Summary Judgment and

---

Defendant's Motion to Dismiss and Motion for Summary Judgment. For the reasons set forth below, the court grants Defendant's Motion for Summary Judgment.

## FACTUAL BACKGROUND

### A. The Older Americans Act

In 1965, Congress enacted the Older Americans Act ("OAA"). 42 U.S.C. § 3001 *et seq.* As described by the Defendant, the OAA

> has evolved into a comprehensive system of services for all persons over the age of sixty years, including outreach to improve employment opportunities for older individuals, an ombudsman program to assist older persons with problems in long-term care facilities as well as during the receipt of in-home care, nutritional services in senior citizens' centers and in the home when disability requires, provision of senior citizens' centers, legal assistance, transportation, and a number of in-home personal care services, *inter alia.*

Defendant's Motion to Dismiss and Motion for Summary Judgment at 3.

Title III of the OAA contemplates certain programs for older Americans and provides that state agencies implement these programs. 42 U.S.C. § 3021 *et seq.* Each state must designate an agency to serve as the sole state agency to:

(a) develop a State plan to be submitted to the Commissioner for approval ...;

(b) administer the State plan ...;

(c) be primarily responsible for the coordination of all state activities related to [the OAA] ...;

(d) serve as an effective and visible advocate for the elderly ... and,

(e) divide the state into distinct planning and service areas....

42 U.S.C. § 3025(a)(1). Of particular concern in this case, the Agency is to "develop a formula, in accordance with guidelines issued by the Commissioner, for the distribution within the State of funds received under this subchapter, taking into account, to the maximum extent feasible, the best available statistics on the geographical dis-

tribution of individuals aged 60 and older in the State, and publish such formula for review and comment." 42 U.S.C. § 3025(a)(2)(C). Furthermore, the agency is to "provide assurances that preference will be given to providing services to older individuals with the greatest economic or social needs, with particular attention to low-income minority individuals." 42 U.S.C. § 3025(a)(2)(E).

In 1978, Congress amended the OAA to include the language of preference for those in "greatest economic or social need." *Id.* Regarding this language, the House Conference Report stated:

> The House recedes to the Senate on the remaining

> provisions, with an amendment to require assurances that preference be given to those in greatest economic or social need. The conferees wish to make clear that inclusion of a preference for those with the greatest economic or social needs is not to be interpreted as a step towards requiring a means test for programs under the Act. There are many elderly who have great social need for the programs under the Act who are not economically deprived. The Act has traditionally been open to all older individuals in need of social and nutritional services, and remains so under these amendments.

H.R.Rep. No. 1618, 95th Cong., 2d Sess. 53, *reprinted in* 1978 U.S.Code Cong. & Admin.News 3388, 3429, 3444 (emphasis in original). The Conference report noted that the "Senate amendment required that area plans give preference to elderly with the greatest economic and social needs," but that the House receded "with an amendment substituting 'economic or social needs.'" *Id.* at 3445. Then the conferees went on to state:

> The conferees wish to emphasize again that inclusion of a preference for those with the greatest economic or social needs is not to be interpreted as a step towards requiring a means test for programs under the Act. There are many elderly who have great social need for

the programs under the Act who are not economically deprived.

*Id.*

Thus the language of the statute and the legislative history make it clear that the OAA is not a poverty program. Social needs of the elderly, independent of economic needs, are recognized as a target of the OAA.

The OAA defines the terms "greatest economic need" and "greatest social need." "Greatest economic need" means "the need resulting from an income level at or below the poverty levels established by the Office of Management and Budget." 42 U.S.C. § 3022(20). "Greatest social need" means "the need caused by noneconomic factors, which include physical and mental disabilities, language barriers, and cultural, social, or geographical isolation including that caused by racial or ethnic status which restricts an individual's ability to perform normal daily tasks or which threatens such individual's capacity to live independently." 42 U.S.C. § 3022(21). The federal Administration on Aging ("AOA") has administered the OAA programs since 1965. The AOA has promulgated regulations to govern OAA programs. 45 C.F.R. § 1321.1 *et seq.*

The regulations require the state agency to consider the views of older individuals and area agencies in formulating the state plan. 45 C.F.R. § 1321.27. The state plan must be signed by the Governor and approved by the AOA. 45 C.F.R. § 1321.13, 1321.15.

### B. The Virginia Plan

The Virginia Department of Aging ("VDA") is authorized and designated by the Virginia General Assembly to be the sole state agency as required by the OAA. Va.Code Ann. § 2.1–372 *et seq.* Within Virginia there are 25 area agencies on aging ("AAA") which have specified planning and service areas. The AAA's receive funding pursuant to the State plan's intrastate funding formula. The AAA's have a written contract with the VDA that they will arrange for the delivery of basic services pursuant to Title III of the OAA. The AAA's provide these services mainly through paid service providers and local volunteers.

The VDA began preparing its State plan and formula for Fiscal Year 1988–1989 in 1986. The VDA met three times with an advisory committee comprised of 11 AAA directors and 6 members of the Governor's advisory board on aging. The resulting proposed formula was announced in April, 1987, and published in 5 newspapers. Public hearings were held in Wytheville, Petersburg and Locust Grove. The VDA subsequently received a letter from the Virginia Association of AAA's, whose membership is comprised of AAA directors, that recommended greater emphasis in the 75+ social demographic criterion, use of SSI with approximately an equal distribution of weights among the 1980 census poverty data, Medicaid and SSI.

The VDA revised its formula for the allocation of Title III funds in Fiscal Year 1988–1989 as follows:

| FACTOR | WEIGHT |
|---|---|
| Number of persons age 60 or older in city or county within the area agency's service area. (Source: Department of Planning and Budget; annual projections) | 15% |
| Number of persons age 75 or older in each city or county within the area agency's service area. (Source: Department of Planning and Budget; annual projections) | 25% |
| Number of persons aged 60 or older with income below the poverty level in each city or county within the area agency's service area. (Source: 1980 Census) | 20% |
| Number of minority persons aged 60 or older with income below the poverty level in each city or county within the area agency's service area. (Source: 1980 Census) | 5% |
| Number of persons aged 60 or older enrolled in Medicaid in each city or county within the agency's service area. (Source: Department of Medical Assistance Services; annual count) | 20%* |
| Number of persons aged 65 enrolled in SSI in each city or | 15%** |

| FACTOR | WEIGHT |
|---|---|

county within the agency's service area. (Source: U.S. Social Security Administration; annual count)

For cities and counties not in an SMSA and counties which are in SMSAs but have a population density of less than 50 people per square mile (Scott, Botetourt, Dinwiddie, Charles City, Goochland, New Kent, and Fluvanna), funding is increased by 10 percent. Funding for nonrural jurisdictions is decreased in an amount necessary to fund the 10% increase.

\* Reduces Medicaid weight by 15% from the proposed formula.

\*\* Adds SSI with a weight of 15%.

\*     \*     \*     \*     \*     \*

The State plan was signed by the Governor on August 17, 1987. On August 26, 1987, the Regional Program Director of the AOA wrote the Governor of Virginia:

> We are pleased to inform you that the Virginia State Plan on Aging for Fiscal Years 1988–89 has been approved. The plan was submitted in accordance with the requirements of Title III of the Older Americans Act of 1965, as amended.
>
> Under your leadership, Commissioner Wilda M. Ferguson and her staff have developed a plan that sets forth major State policies and describes the development of a comprehensive and coordinated system for the delivery of services to older Virginians.
>
> Commissioner Ferguson deserves a special word of commendation for her untiring efforts in implementing long-term care services under Virginia Senate Bill 219 and the successful revision of the Title III intrastate funding formula.

Letter from Paul E. Ertel, Jr. to Gerald L. Baliles (August 26, 1987).

On June 23, 1988, several AAA's sued Wilda Ferguson in her official capacity as Commissioner of the VDA. Plaintiffs seek to enjoin the VDA from using the formula and to promulgate a new formula. The VDA has moved to dismiss and has, alternatively, moved for summary judgment. Plaintiffs have also moved for summary judgment. In oral argument before the court both parties agreed that the court can dispose of this matter by granting summary judgment since all factual matters are undisputed.

Defendants advance several procedural grounds to support their Motion to Dismiss. The court, however, is convinced that the substantive grounds require granting of summary judgment in favor of the defendant. Accordingly, the court will address the case on its merits.

## ANALYSIS

The gist of Plaintiffs' argument is as follows:

> 45 C.F.R. 1321.37 is of critical significance to this case. It is composed of four sentences all of which contain the mandatory word 'must'. The part of the regulation applicable here is the third sentence which states:
>
> 'The formula *must* reflect the proportion among the planning and service areas of persons age 60 and over in greatest economic need *or* social need with particular attention to low income minority individuals. (Emphasis added).'
>
> Although Defendant may claim that the sentence is ambiguous, it is not. The only way to give effect to the plain language of the regulation is to recognize that the work 'or' grants a choice to the state agency. It can distribute all Title III funds according to the distribution of persons in 'greatest economic need' *or* it can distribute funds according to the distribution of persons in 'greatest social need'.
>
> Although the regulation on its face mandates distribution of Title III funds according to a *single* need-based factor, the Defendant's formula is composed of several factors.

Plaintiffs Reply Memorandum at 18.

In oral argument before this court, Plaintiffs' counsel argued that the correct formula is 95% poverty 60 and above, 5% minority with a 10% "rural boost."

Plaintiffs' argument is not in accord with the "plain language" of the statute and no facts have been developed to support their proposed formula. If the state of Virginia adopted Plaintiffs' suggested formula it would be ignoring the clear intent of Con-

gress to provide for, through OAA programs, senior citizens who have social needs but may not be economically deprived. As discussed earlier, the House Conference Report recognized that there "are many elderly who have great social need under the Act who are not economically deprived." H.R.Rep. No. 1618, 95th Cong., 2d Sess. 53, *reprinted in* 1978 U.S. Code Cong. & Admin.News 3429, 3444. The Plaintiffs, without basis in the language of the statute and completely contrary to legislative history, want this court to transform the OAA into another poverty program. Even if a factual basis existed, and even if regulations required such a formula, this court would be performing a legislative act to transform the formula. Such decisions must remain with the legislative and executive branches of government.

Although the OAA is not a poverty program, Virginia does emphasize economic needs over social needs. The Virginia formula is weighted 60/40 in favor of economic needs. "The balance between social need and economic need in Virginia, of all states in the Union, made Virginia the second highest provider of funds based on elderly poverty." Affidavit of Wilda Ferguson, p. 9.

Nothing in the OAA requires the State to give economic needs more weight than social need; however, Virginia has seen fit to do so, being second in the nation in providing funds to the elderly poor. If Plaintiffs fully understand this, it seems they should applaud and refrain from scorn.

■ Not only do the Plaintiffs want the formula to be based 95% on poverty, they also want poverty to be based on the 1980 census. The Virginia formula does give 20% weight to elderly poverty based on the 1980 census. In addition, the Virginia formula gives 20% weight to the number of persons aged 60 or older enrolled in Medicaid and 15% weight to the number of persons 60 and over enrolled in SSI. Plaintiffs object to the use of these "surrogate poverty factors."[1] No evidence has been presented to the court to show that these factors do not accurately present true poverty factors.

Defendant argues that the State did not base its economic needs portion of the formula entirely on the 1980 census simply because the census is "practically archaic." Defendant argues that Medicaid and SSI are valid measures of poverty. Both require an income level at or below the poverty level and both are much more current than the 1980 census. The only evidence before this court with respect to Medicaid as a factor is a 1980 study that found a high correlation between the population aged 60 and above with an income below the poverty level and those on Medicaid. The court is not prepared to say that use of Medicaid and SSI as factors create a perfect formula; however, no evidence has

---

1. The Medicaid factor is unquestionably the single most controversial part of the formula. At oral argument this court expressed some doubts as to the relevancy of Medicaid statistics to problems of the elderly. Defendant argued that all the Medicaid statistics related to elderly persons, and younger persons were factored out. The Commonwealth further argued that Medicaid statistics were fully up to date on elderly persons, whereas other poverty statistics related back to the 1980 Census and were out of date.

Since oral argument, plaintiffs have submitted further written argument regarding Medicaid. This argument may be summarized as follows: Elderly Medicaid recipients do not equal elderly persons with "greatest economic need."

Considering these conflicting positions, the court doubts that Medicaid statistics should be considered at all in the agency's formula, however, the court does not feel that it has before it evidence to either exclude or include Medicaid as a factor. Plaintiffs and defendants each have stated to the court they have no other evidence to present and do not desire an evidentiary hearing.

To strike the Medicaid factor from the agency's formula and substitute something in its place would be the height of folly on the part of the court. Considering, however, that the current formula expires after this year, the court feels the Commonwealth should hold new hearings, review any evidence and argument of plaintiffs, attempt to develop any new statistical data and thoroughly reconsider whether Medicaid should be considered at all in this formula. Thus, agency review appears to be the best avenue for these plaintiffs to seek relief, rather than an opinion of this court based on incomplete and inadequate evidence.

been presented to permit the court to conclude the factors are unreasonable.[2]

### CONCLUSION

Plaintiffs ask this court to direct the VDA to distribute OAA funds based 95% on elderly poverty. The face of the statute clearly addresses social needs of older Americans as well as their economic needs. Moreover, the legislative history is clear that elderly citizens who have social needs but not economic needs are targeted by the OAA. Thus, Plaintiffs' request that this court require the VDA to promulgate a formula based 95% on elderly poverty is nothing short of a request for this court to sit as a superlegislature and transform the OAA into a poverty program. The court declines to do so.

Plaintiffs also disagree with the use of Medicaid and SSI as indicators of elderly poverty. Plaintiff has not, however, presented this court with evidence that the use of these factors is unreasonable. Therefore, the court declines to change the VDA formula simply as a whim, by substituting its judgment for experts in this field.

Accordingly, an Order will be entered granting summary judgment to defendants.

---

**2.** The Fourth Circuit very recently has indicated that courts should respect the interpretation of a state agency that administers Federal programs. *Deel v. Jackson,* 862 F.2d 1079, 1087 (4th Cir. 1988).