## APPALACHIAN AGENCY FOR SENIOR CITIZENS, et al., Plaintiffs,

v.

## Thelma BLAND in her official capacity as the Commissioner of the Virginia Department of the Aging, Defendant.

### Civ. A. No. 88–0123–B.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Sept. 19, 1991.

Gerald L. Gray, Gray and Morris, Clintwood, Va., for plaintiffs.

Carol S. Nance, Asst. Atty. Gen., Richmond, Va., for defendant.

## MEMORANDUM OPINION

WILSON, District Judge.

This is an action for declaratory and injunctive relief under 42 U.S.C. § 1983 by five non-profit agencies that are authorized recipients of funds under Title III of the Older Americans Act ("OAA" or the

"Act"), 42 U.S.C. §§ 3001 et seq. (Supp. 1991), against the Commissioner of the Virginia Department for the Aging (the "VDA"), Thelma Bland ("Bland"), alleging that Virginia's intrastate funding formula for the 1990–1991 fiscal years fails to comply with the requirements of the OAA primarily because the formula allegedly fails to reflect the proportion of older persons in the greatest economic or social need and because the Commonwealth of Virginia has not adequately justified the formula. The court previously rejected a challenge to the funding formula for the 1988–1989 fiscal years. *Appalachian Agency for Senior Citizens v. Ferguson*, 702 F.Supp. 1262 (W.D.Va.1988), *appeal dismissed*, 902 F.2d 27 (4th Cir.1990).[1] The appeal of that decision to the court of appeals was dismissed as moot following the promulgation of a new funding formula, and the case was remanded to permit plaintiffs to file an amended complaint. The issues raised by the amended complaint are currently before the court on cross-motions for summary judgment. Bland maintains that this action is precluded by the eleventh amendment and that three of the challenging agencies lack standing. The court finds that the action is not barred by the eleventh amendment, but finds it unnecessary to decide the question of whether three of the agencies have standing, because the standing of at least two of the agencies requires the court to decide the case on its merits. The court also finds that its role in reviewing the funding formula is to determine whether the formula is in compliance with federal law and rationally based rather than arbitrary and capricious. Thus, the court's role is not to supplant its judgment for the judgment of the state officials, who are charged with the responsibility of establishing the formula. Because the formula is found to be in compliance with federal law and rationally based, the challenge to the formula must be rejected.

The OAA of 1965, as amended, was enacted to promote the well-being of all older Americans by providing services and programs designed to help them live independently in their homes and communities. The centerpiece of the OAA is a comprehensive funding system for state and community programs and services established under Title III of the OAA. Under Title III, each state is allotted funds based upon its proportion of the total population in the United States age sixty or older. 42 U.S.C. § 3024(a)(1). Each state designates a state agency (in Virginia the VDA), which is responsible for developing and administering a two to four year plan implementing the Act's objectives. The state plan ultimately must be approved by the federal agency responsible for administering the Act nationally, the Administration on Aging ("AOA") of the Department of Health and Human Services. 42 U.S.C. § 3027(b). The state agency distributes the funds to an area agency on aging ("AAA") in each planning and service area within the state which, in turn, awards subgrants and contracts with local providers for services.

The Act requires preference to be given to "older individuals with the greatest economic or social needs," 42 U.S.C. § 3025(a)(2)(E), "with particular attention to low-income minority individuals." 45 C.F.R. § 1321.37(a) (1990). In addition, the state plan must "include proposed methods for carrying out the preference...." 42 U.S.C. § 3025(a)(2)(E). An "older individual" is defined as an individual sixty years of age or older. 42 U.S.C. § 3022(9). The "greatest economic need" is defined as "the need resulting from an income level at or below the poverty levels established by the Office of Management and Budget." 42 U.S.C. § 3022(20). The "greatest social need" is defined as "the need caused by non-economic factors which include physical and mental disabilities, language barriers, and cultural, social, or geographical isolation including that caused by racial or ethnic status which restricts an individual's ability to perform normal daily tasks or which threatens such individual's capacity

---

1. When this action was filed initially, the commissioner of the VDA was Wilda Ferguson. The new commissioner is Thelma Bland.

to live independently." 42 U.S.C. § 3022(21). 

In addition to developing a state plan, the designated state agency must develop a funding formula, under guidelines issued by the Commissioner of the AOA, for the distribution of funds "taking into account, to the maximum extent feasible, the best available statistics on the geographical distribution of individuals aged 60 and older in the State...." 42 U.S.C. § 3025(a)(2)(C). AOA regulations implement the preference provisions of the Act by requiring each state's funding formula to "reflect the proportion among the planning and service areas of persons age 60 and over in greatest economic or social need with particular attention to low-income minority individuals." 45 C.F.R. § 1321.37(a). The formula is published for "review and comment" by the public, 42 U.S.C. § 3025(a)(2)(C), and ultimately is submitted to the Commissioner for "review and comment." 42 U.S.C. § 3025(a)(2)(D).[2]

In 1989, the Virginia Secretary of Health and Human Resources appointed a thirty-two member task force "to [d]evelop the Virginia State Application for Older Americans Act Funds." The task force was divided into various work groups, including a "Formula Allocation Work Group," to develop and recommend an intrastate funding formula. In April of 1989, the work group recommended to the task force a funding formula, which was submitted without modification for public comment. Following five public hearings at various locations throughout Virginia, the proposed formula recommended by the work group, together with transcriptions of the five public hearings, documents, and written comments, was submitted to the task force. After considering the testimony, documents, and written comments, the task force recommended the formula in July of 1989. In August of that year, the governor approved the state plan and the formula and later submitted them to the AOA. The AOA approved the state plan and reviewed the formula without adverse comment.[3]

Under the formula, funds for fiscal years 1990–1991 are allocated as follows:

**2.** There is a difference of opinion, as pointed out in a recent Government Accounting Office report, as to AOA's authority to approve or disapprove of state funding formulas:

> Although AOA approves the service plan developed by the state agency, it does not consider the funding formula to be part of the plan and, therefore, does not approve the formula. AOA believes that because the act discusses the formula in section 305 (42 U.S.C. 3025)—which addresses state agency duties—rather than in section 307 (42 U.S.C. 3027)—which deals with the approval by AOA of state plans—the act does not authorize AOA to approve intrastate funding formulas. AOA's position is that the statutory language authorizing it to "review and comment" on formulas prohibits it, by implication, from disapproving formulas.
>
> We believe AOA's authority to "review and comment" on formulas does not preclude it from disapproving formulas that fail to comply with its guidelines. A condition of grant eligibility is that a state must have a funding formula that conforms to AOA's guidelines. An agency has authority to enforce grant conditions. Since a funding formula that complies with the guidelines is a grant condition, it follows that the agency has authority to enforce them.
>
> We believe the act gives AOA two chances to consider the formula. First, AOA can review and comment on the formula as it is being developed by the state agency. This puts the state on notice of potential problems, although AOA lacks the authority to prevent the state from adopting the formula. Second, once the state has adopted the formula, AOA can determine whether it meets the agency's guidelines and, if it does not, can initiate the procedure to declare the state ineligible to receive funds.
>
> Although we disagree with AOA's position, we recognize that the law leaves room for different interpretations. The act does not clearly state that formulas are to be included as part of the plan or are to be submitted to AOA for approval; it states only that AOA must "review and comment" on them. This language arguably limits, by implication, AOA's authority. Without clearer statutory authority, and in view of its current position that it lacks authority, AOA might be in a vulnerable legal position if it disapproved formulas and withheld funds from the states.

General Accounting Office, Report to Congressional Requesters, *OLDER AMERICANS ACT: Administration on Aging Does Not Approve Intrastate Funding Formulas*, GAO/HRD-90-85 (B-237081) 9-10 (1990) [hereinafter GAO Report].

**3.** As set forth in footnote 2, the AOA takes the position that it lacks authority to approve or disapprove of state funding formulas.

| | |
|---|---|
| Population 60+ | 30% |
| Rural population 60+ | 10% |
| Poverty population 60+ | 50% |
| Minority population 60+ | 10% |

Bland Affidavit (6/18/90), Exhibit C at 3. However, Virginia adopted a "hold harmless" policy insuring that no agency's funds would fall below its 1989 funding level and that no agency would receive less than $100,000.00. The purpose of the "hold harmless" provision was to prevent a major "disruption of services" in the event of "significant shifts in funding" from 1989 to the 1990–1991 fiscal years. Taking into account the receipt of general state funds, "[a]ll area agencies have received funds during Fiscal Years 1990 and 1991 in excess of any allocation of federal and state match [sic] funds that would have been provided [under the formula] without the 'hold harmless' provision." Bland Affidavit (9/16/91) at 3.

Plaintiffs are five of Virginia's twenty-five AAAs, which allegedly are receiving "less funding than if the formula conformed to the requirements of the OAA": Appalachian Agency for Senior Citizens, Inc., which serves Dickenson, Buchanan, Tazewell and Russell Counties; District III Governmental Cooperative, which serves Washington, Smyth, Wythe, Bland, Grayson, and Carroll Counties and the Cities of Galax and Bristol; Jefferson Area Board for Aging, which serves Nelson, Albemarle, Louisa, Fluvanna, and Greene Counties, and the City of Charlottesville; Mountain Empire Older Citizens, Inc., which serves Lee, Wise, and Scott Counties, and the City of Norton; and New River Valley Agency on Aging, which serves Giles, Floyd, Pulaski, and Montgomery Counties, and the City of Radford.[4] Three of the AAAs, District III Governmental Cooperative, New River Agency on Aging, and Jefferson Area Board for Aging, were formed by cooperating local governments pursuant to Va.Code Ann. § 15.1–21 (Cum. Supp.1991). The remaining two AAAs, the Appalachian Agency for Senior Citizens, Inc. and the Mountain Empire Older Citi-

zens, Inc., are private non-profit corporations.

### I.

Although Bland challenges the three governmental AAAs' standing to sue under 42 U.S.C. § 1983, the court finds it unnecessary to reach the issue because the two non-governmental AAAs, the Appalachian Agency for Senior Citizens, Inc. and the Mountain Empire Older Citizens, Inc., have standing to challenge the funding formula as advocates for the elderly. The Act specifically provides that an AAA is to "serve as the advocate and focal point for the elderly within the community by monitoring, evaluating, and commenting upon all policies, programs, hearings, levies, and community actions which will affect the elderly." 42 U.S.C. § 3026(a)(6)(D). Consequently, as stated in *Meek v. Martinez,* 724 F.Supp. 888, 901 (S.D.Fla.1987), "[t]he AAA is within the zone of interests protected by the Act," which confers "direct standing" upon it.

### II.

Bland argues that this action is barred by the eleventh amendment because a suit against a state official in his official capacity is, in effect, a suit against the state. Bland's argument, however, ignores *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). *"Ex parte Young* recognized an exception to the States' Eleventh Amendment immunity for suits that charge state officials with violations of federal law and request prospective relief." *Virginia Hosp. Ass'n v. Baliles,* 868 F.2d 653, 662 (4th Cir.1989), *aff'd, Wilder v. Virginia Hosp. Ass'n,* —— U.S. ——, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). *Virginia Hosp. Ass'n* was a suit for injunctive relief by the Virginia Hospital Association ("VHA") against various officials of the government of the Commonwealth of Virginia challenging the rate of reimbursement that VHA members received for treating Medicaid patients. In rejecting the argument that the action was barred by the

---

**4.** The executive director of the New River Valley Agency on Aging chaired the formula allocation work group, which recommended the formula that is now being challenged.

eleventh amendment, the court of appeals stated:

> Virginia ... asserts that the Commonwealth is the "real party in interest" to the action and that VHA seeks disguised monetary relief in the form of higher reimbursement rates. Virginia is, of course, correct to some extent, but has nonetheless failed to identify why the case is not within the *Ex parte Young* exception. A suit against Virginia officials for actions done in obedience to Commonwealth law naturally interests the Commonwealth, but is just the sort of action *Ex parte Young* authorized. The Supreme Court has also repeatedly recognized that "relief that serves directly to bring an end to a present violation of federal law is not barred by the Eleventh Amendment even though accompanied by a substantial ancillary effect on the state treasury." *Papasan [v. Allain]*, 478 U.S. [265] at 278, 106 S.Ct. [2932] at 2940, 92 L.Ed.2d [209] at 227 [(1986)]; *see also Milliken v. Bradley*, 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977); *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). We believe the district court correctly held this action not barred by the Eleventh Amendment.

*Id.* Thus, since plaintiffs in this action seek only prospective relief, the eleventh amendment does not apply.

Bland maintains that two recent cases, *Blatchford v. Native Village of Noatak*, — U.S. ——, 111 S.Ct. 2578, 115 L.Ed.2d 686 (1991), and *Dellmuth v. Muth*, 491 U.S. 223, 109 S.Ct. 2397, 105 L.Ed.2d 181 (1989), further support her contention that this action is barred by the eleventh amendment. Although distinguishable on numerous other grounds, it is sufficient to state that a retroactive monetary award was sought from the state in both cases relied upon by plaintiffs. The petitioners in *Blatchford* sought an order requiring the state to pay money they claimed they should have received. In *Dellmuth*, plaintiff sought "reimbursement." 491 U.S. at

226, 109 S.Ct. at 2399. In contrast, the present case is one for prospective relief only.[5] It is not barred, therefore, by the eleventh amendment.

### III.

In their amended complaint, plaintiffs argue that the intrastate funding formula fails to reflect the proportion of older persons in the greatest economic or social need on two inter-related grounds. First, they maintain that to allocate funds on the basis of population over sixty is not to allocate funds on the basis of "the greatest economic or social need." Second, plaintiffs contend the formula was "intended to perpetuate the status quo in funding levels" as exemplified by the " 'hold harmless' policy" and the " 'sixty and over' factor." Plaintiffs also argue that the publication of the intrastate formula for review and comment was deficient and that the formula should be voided because the publication failed to "apply the definitions of greatest economic or social need to the proposed formula" and failed "to disclose the assumptions governing the various weights assigned to the different factors." Each of plaintiffs' arguments is rejected.

### A. *The Sixty and Over Factor*

▮ As the court explained previously, the VDA is charged with developing a formula in accordance with the guidelines issued by the Commissioner. 42 U.S.C. § 3025(a)(2)(C). The Commissioner's guidelines simply require the state's funding formula to "reflect the proportion among the planning and service areas of persons age 60 and over in greatest economic or social need with particular attention to low-income minority individuals." 45 C.F.R. § 1321.37(a). No further direction is given to the states for developing formulas. As the Supreme Court stated in *Dandridge v. Williams*, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970), "the starting point of the statutory analysis must be a recognition that the federal law gives each State great latitude in dispensing its available funds." Given this great latitude, the

---

**5.** Plaintiffs do not seek to compel Bland to provide more money to Virginia's program. Rath-er, plaintiffs seek to reallocate the remainder of the funds provided by the AOA.

court is limited to deciding whether Virginia acted rationally or whether it acted arbitrarily and capriciously by including the population age sixty or older as a separate factor in its funding formula.[6] *See Friedman v. Perales*, 668 F.Supp. 216, 221 (S.D.N.Y.1987), *aff'd*, 841 F.2d 47 (2d Cir. 1988); *Mary Washington Hosp., Inc. v. Fisher*, 635 F.Supp. 891, 897 (E.D.Va.1985); *Pinnacle Nursing Home v. Axelrod*, 719 F.Supp. 1173, 1181 (W.D.N.Y.1989), *aff'd in part, vacated in part*, 928 F.2d 1306 (2d Cir.1991).

As this court underscored in its previous opinion, "the language of the statute and the legislative history make it clear that the OAA is not a poverty program. Social needs of the elderly, independent of economic needs, are recognized as a target of the OAA." *Appalachian Agency*, 702 F.Supp. at 1264. By allocating thirty percent of its OAA funds on the basis of population for persons sixty years of age or older, Virginia has simply recognized that population is indicative of social need, as have forty-one other states. *See* GAO Report at 15. Though population may or may not be indicative of economic need, given the disparity of wealth from one region or locality to the next, it most definitely is a reliable measure of "social need" as that term has been defined by Congress. Indeed, even Congress implicitly assumed that population is indicative of "social need" when it directed that funds be distributed proportionally among the states based upon the population sixty years of age or older. 42 U.S.C. § 3024(a)(1).

"Economic need" can be quantified and identified with economic and financial data. "Social need," for obvious reasons, cannot be. Each region or locality within the state can make a compelling argument that its older citizens have social needs that differ from the citizens of other regions and localities. But no matter how eloquently stated or reasoned a claim for additional funds might be, population remains a reliable indicator of social need and therefore, remains an equitable consideration in the allocation of funds under the OAA.

### B. *The Status Quo: The "Hold Harmless" Policy*

■ Plaintiffs assert that "the formula was designed to perpetuate the status quo rather than reflect the proportion of elderly persons in greatest economic or social need," and they cite the "hold harmless" policy as the evidence of that fact. While the "hold harmless" policy seeks to prevent a major "disruption in services" in the event of "significant shifts in funding," the purpose and application of the policy are hardly objectionable. Without such a policy, reductions in funding would result in the elimination of established programs upon which the elderly have come to rely. Furthermore, in light of the appropriation and allocation of general funds by the Commonwealth of Virginia, not a single AAA receives less funding than it would receive if federal funds and state matching funds were allocated strictly in accordance with the percentages called for in the formula without regard to the "hold harmless" policy.[7] Thus, not only is the "hold harmless" policy rational, plaintiffs have no basis to complain about it.

### C. *The Publication for Review and Comment*

■ The OAA provides, in part, that a publication for review and comment should

---

**6.** Citing *Meek v. Martinez*, 724 F.Supp. 888 (S.D.Fla.1987), plaintiffs maintain that Bland must prove that the formula "bears a 'manifest demonstrable relationship' to achieving the goals mandated by the OAA." *Id.* at 906. The court in *Meek*, however, articulated that test in light of its finding that the challenged funding formula was discriminatory under Title VI of the Civil Rights Act of 1964. *See id.* at 906, 908.

**7.** It appears that the only factor having any tendency to maintain the status quo is the "rural population age 60 and over" factor, which benefits most of the plaintiffs, and that factor was

adequately justified by the committee which recommended it:

> The rural factor 60+ is utilized to denote the geographical isolation faced by the elderly Virginians living in rural areas of state. Rural is defined as jurisdictions which are not part of a Virginia Metropolitan Statistical Area (MSA) and those MSA jurisdictions which have a population density of less than 50 persons per square mile. A 10% weight reflects the committees effort to meet this social need.

Bland Affidavit (6/18/90), Exhibit B at 3.

include "a descriptive statement of the formula's assumptions and goals, and the application of the definitions of greatest economic or social need...." 42 U.S.C. § 3025(d)(1). Plaintiffs contend the publication was deficient under that provision because it failed to "apply the definitions of greatest economic or social need to the proposed formula" and failed "to disclose the assumptions governing the various weights assigned to the different factors." Although the publication could have further explained the formula's assumptions and goals and the application of the definitions of greatest economic or social need, that perceived deficiency was far from prejudicial. There is nothing to suggest the formula was developed and adopted with anything less than full community participation and robust debate. To the contrary, even the affidavits submitted by plaintiffs demonstrate that such participation and debate occurred. Technical violations of the procedural provisions of the OAA, without more, are inadequate grounds for the court to void a thoroughly considered and fairly debated intrastate funding formula.

## IV.

For the reasons stated above, Virginia's 1990–1991 intrastate funding formula is found to be a rational exercise of the considerable discretion committed to the Commonwealth of Virginia under the OAA. Summary judgment, accordingly, will be entered for defendant, Thelma Bland, the Commissioner of the VDA.