**SOUTHWEST MISSOURI OFFICE ON AGING, Plaintiff,**

v.

**MISSOURI DEPARTMENT OF SOCIAL SERVICES, et al., Defendants.**

No. 91–4548–CV–C–9.

United States District Court,
W.D. Missouri, C.D.

April 13, 1994.

Michael G. Berry, Hendren & Andrae, Jefferson City, MO, for Southwest Missouri Office of Aging.

Marcia Mulcahy, Limbaugh, Russell, Payne & Howard, Cape Girardeau, MO, for Southeast MO AAA, Glenda Hood, Exec. Dir.

Bruce A. Bailey, Bailey & Associates, Warrensburg, MO, for Dist. III AAA, Raymond Diekmeier, Exec. Dir. and Northwest MO AAA, Ron Rauch, Exec. Dir.

Thomas M. Harrison, Craig A. Van Matre, P.C., Columbia, MO, for Cent. MO AAA, Jean Leonatti, Exec. Dir.

Joseph R. Colantuono and Mark Jones, Polsinelli, White, Vardeman & Shalton, P.C., Overland Park, KS, for Mid–America Regional Council, Jacqui Moore, Exec. Dir.

Brian E. McGovern and Louis N. Laderman, McCarthy, Leonard, Kaemmerer, Owen, Laderman & Lamkin, Chesterfield, MO, for Mid–East MO AAA, William Keel, Exec. Dir.

Jerry L. Holcomb, Collins, Webster & Rouse, P.C., Joplin, MO, for Region X AAA, Linda Carlson, Exec. Dir.

Edward J. Hanlon, City Counselor's Office, St. Louis, MO, for City of St. Louis, MO and Thomas A. Villa.

Paul T. Keller, Dept. of Social Services, Div. of Legal Services, and Steven M. Kuntz, Missouri Dept. of Social Services, Div. of Legal Services, Jefferson City, MO, for Missouri Dept. of Social Services, Div. of Aging, Gary J. Stangler, Director of the Missouri Dept. of Social Services and Edwin Walker, Director of the Div. of Aging.

### ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT, GRANTING DECLARATORY AND INJUNCTIVE RELIEF AND SETTING TELEPHONE CONFERENCE

BARTLETT, District Judge:

Plaintiff Southwest Missouri Office on Aging (SMOA) initiated this lawsuit to challenge defendant Missouri Department of Social Services, Division of Aging's (DOA), allocation and distribution of certain federal grant monies available pursuant to the Older Americans Act (OAA), 42 U.S.C. § 3001 et seq. These monies are to be allocated to and distributed among the ten Missouri Area Agencies on Aging (AAAs). Plaintiff SMOA is one of the ten Missouri AAAs. On April 30, 1992, the other nine AAAs were joined as plaintiffs pursuant to Rule 19(a), Federal Rules of Civil Procedure.

In Count III of its Second Amended Complaint, SMOA alleges that the formula used by Missouri to distribute the federal grant

money among the AAAs fails to comply with the requirements of the OAA because it fails to reflect the proportion of older persons in the greatest economic and social need. SMOA seeks 1) a declaratory judgment declaring the funding formula unlawful; 2) an injunction compelling defendants to revise the funding formula so that it is in accordance with the law; and 3) an injunction prohibiting defendants from distributing monies under the funding formula until the formula complies with the law.

Plaintiff SMOA and several other AAAs move for summary judgment on Count III of plaintiff's Second Amended Complaint.

## I. *Background*

The OAA was enacted in 1965 "to promote the well-being of all older Americans by providing services and programs designed to help them live independently in their homes and communities." *Appalachian Agency for Senior Citizens v. Bland,* 775 F.Supp. 191, 193 (W.D.Va.1991). Title III of the OAA establishes a comprehensive funding system for state and community programs and services. *Id.* Under Title III, each state is allotted federal funds based upon its proportion of the total population in the United States of "older individuals." 42 U.S.C. § 3024(a)(1). Each state designates a state agency (in Missouri the DOA), which is responsible for developing and administering a plan implementing the OAA's objectives and for distributing the federal funds to the various state AAAs. *Appalachian Agency,* 775 F.Supp. at 193.

Of particular importance in this case, the OAA requires the designated state agency to develop a formula for the distribution of funds received pursuant to the OAA. 42 U.S.C. § 3025(a)(2)(C) states:

> [T]he State agency shall ... in accordance with guidelines issued by the Commissioner [of the Administration on Aging] ... develop ... a formula for distribution within the State of funds received under this subchapter that takes into account—
>
> (i) the geographical distribution of older individuals in the State; and
>
> (ii) the distribution among planning and service areas of older individuals *with*

> *greatest economic need and older individuals with greatest social need, with particular attention to low-income minority older individuals.* (emphasis added).

The regulations issued by the Commissioner of the Administration on Aging implement the above provisions by requiring each state's funding formula to "reflect the proportion among the planning and service areas of persons age 60 and over in greatest economic need or social need with particular attention to low-income minority individuals." 45 CFR § 1321.37(a).

The OAA defines the terms "greatest economic need" and "greatest social need." "Greatest economic need" is defined as "the need resulting from an income level at or below the poverty line." 42 U.S.C. § 3022(29). "Greatest social need" is defined as

> the need caused by noneconomic factors, which include—
>
> (A) physical and mental disabilities;
>
> (B) language barriers; and
>
> (C) cultural, social, or geographical isolation, including that caused by racial or ethnic status, that—
>
> > (i) restricts the ability of an individual to perform normal daily tasks; or
> >
> > (ii) threatens the capacity of the individual to live independently.

42 U.S.C. § 3022(30).

Beginning July 1, 1992, defendants allocated the Title III funds in accordance with a new formula which consists of the following factors and weights:

> a) number of individuals 60+ = 1 point
>
> b) number of individuals 75+ = 4 points
>
> c) number of individuals 60+ below poverty line = 2 points
>
> d) number of minority individuals 60+ = 1 point
>
> e) number of low income minority individuals 60+ = 1 point

13 CSR 15–4.050(2). This new formula differs from its predecessor in that the weight assigned to factor "d", the number of minority individuals 60+, was increased from ½ to 1 point. In addition, a new factor, the number

of low income minority individuals 60 +, was added as "e" and given a weight of 1 point.

The Missouri regulations also contain a provision insuring that the funding formula allocates to rural areas in the state at least 105% of the amount spent under the OAA for services in rural areas in the 1978 fiscal year. 13 CSR 15.040(1)(D).

II. *Standard for Summary Judgment*

■ Rule 56(c), Federal Rules of Civil Procedure, provides that summary judgment shall be rendered if the "pleadings, deposi- tions, answers to interrogatories, and admis- sions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, it is the court's obligation to view the facts in the light most favorable to the adverse party and to allow the adverse party the benefit of all reasonable inferences to be drawn from the evidence. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970); *Inland Oil and Trans- port Co. v. United States,* 600 F.2d 725, 727– 28 (8th Cir.), *cert. denied,* 444 U.S. 991, 100 S.Ct. 522, 62 L.Ed.2d 420 (1979).

■ If there is no genuine issue about any material fact, summary judgment is proper because it avoids needless and costly litiga- tion and promotes judicial efficiency. *Rob- erts v. Browning,* 610 F.2d 528, 531 (8th Cir.1979); *United States v. Porter,* 581 F.2d 698, 703 (8th Cir.1978). The summary judg- ment procedure is not a "disfavored proce- dural shortcut." Rather, it is "an integral part of the Federal Rules as a whole." *Celo- tex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986); *see also City of Mt. Pleasant v. Associated Elec- tric Cooperative, Inc.,* 838 F.2d 268, 273 (8th Cir.1988). Summary judgment is appropri- ate against a party who fails to make a showing sufficient to establish that there is a genuine issue for trial about an element es- sential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553.

■ The moving party bears the initial burden of demonstrating by reference to por- tions of pleadings, depositions, answers to interrogatories and admissions on file, to- gether with affidavits, if any, the *absence* of genuine issues of material fact. However, the moving party *is not required* to support its motion with affidavits or other similar materials *negating* the opponent's claim. *Id.* (emphasis added).

■ The nonmoving party is then required to go beyond the pleadings and by affidavits, depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Id.* A party opposing a properly sup- ported motion for summary judgment cannot simply rest on allegations and denials in his pleading to get to a jury without any signifi- cant probative evidence tending to support the complaint. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The evidence favoring the non- moving party must be more than "merely colorable." *Id.* 477 U.S. at 249, 106 S.Ct. at 2511. When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted).

■ The inquiry to be made mirrors the standard for a directed verdict: whether the evidence presented by the party with the onus of proof is sufficient that a jury could properly proceed to return a verdict for that party. *Anderson v. Liberty Lobby,* 477 U.S. at 249, 106 S.Ct. at 2511. Essentially, the question in ruling on a motion for summary judgment and on a motion for directed ver- dict is whether the evidence presents a suffi- cient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Id.* 477 U.S. at 251, 106 S.Ct. at 2512.

### III. *Discussion*

As previously stated, the DOA is charged with developing a formula in accordance with the guidelines issued by the Commissioner of the Administration on Aging. 42 U.S.C. § 3025(a)(2)(C). The Commissioner's guidelines follow the language of the OAA and require the DOA's funding formula to "reflect the proportion among the planning and service areas of persons age 60 and over in greatest economic need or social need with particular attention to low-income minority individuals." 45 CFR § 1321.37(a). No further direction is given to the states for developing formulas.

As the United States Supreme Court stated in *Dandridge v. Williams,* 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970), "the starting point of the ... analysis must be a recognition that the federal law gives each State great latitude in dispensing its available funds." Given this great latitude, I am limited to deciding whether the DOA's inclusion of the factors contained in the funding formula is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, or if the funding formula fails to meet statutory, procedural, or constitutional requirements. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 822–23, 28 L.Ed.2d 136 (1971); *Appalachian Agency for Senior Citizens v. Bland,* 775 F.Supp. 191, 196–97 (W.D.Va.1991). I must recognize, however, that the OAA narrows the discretion of the DOA by requiring the funding formula to target older individuals with the greatest economic and social need, with particular attention to low-income minority older individuals. *See Meek v. Martinez,* 724 F.Supp. 888, 903 (S.D.Fla.1987).

In this case, *defendants* admit that the "number of individuals 75 +" factor contained in Missouri's intrastate funding formula is not in compliance with the OAA. *See* Defendant's Suggestions in Opposition pp. 2–4, 9, 10. Furthermore, *defendants* request "[a]n order declaring that the 75 + factor of the current intrastate funding formula does not comply with the Older Americans Act (OAA) and is, therefore, invalid." *Id.* at 10.

Defendants argue, however, that although one factor of the funding formula does not comply with federal law, the other factors contained in the funding formula comply with federal law. Even if defendants were correct that the other factors comply with the OAA, the formula as a whole fails to comply with federal law. The "number of individuals 75 +" factor is the single most important factor in determining how funds are to be distributed among the AAAs. The "number of individuals 75 +" factor has an assigned weight of four points, twice the weight given to any of the other four factors. Because defendants admit that this important factor in the formula does not comply with federal law, its inclusion in the formula invalidates the entire formula. Furthermore, even if the other factors comply with the OAA, there has been no showing that additional factors should not be included in the formula to comply with the OAA.

Accordingly, because no dispute of material fact exists as to the validity of the formula, I conclude as a matter of law that Missouri's formula as set forth in 13 C.S.R. § 15–4.050 violates the Older Americans Act. Plaintiffs are entitled to a declaratory judgment and prohibitory injunctive relief at this time. Whether plaintiffs are entitled to further relief and the nature of that relief, if any, will be determined at a later date.

### IV. *Conclusion*

For the reasons stated, it is ORDERED that:

1) plaintiffs' Motion for Summary Judgment filed January 27, 1994, is granted in part;

2) it is declared that Missouri's current intrastate funding formula as set forth in 13 C.S.R. § 15–4.050 violates the Older Americans Act;

3) defendants are enjoined from using the current intrastate funding formula set forth in 13 C.S.R. § 15–4.050 to distribute funds received under the Older Americans Act for the fiscal year beginning July 1, 1994; and

4) at 9:30 a.m. on April 21, 1994, the court will initiate a telephone conference with all parties to discuss defendants' plans for implementing the OAA in Missouri for the next

fiscal year and to discuss whether plaintiffs are entitled to further relief and, if so, the nature of that relief.