Sarah SLACK and Kathryn and James Peiffer, Plaintiffs,

v.

STATE OF DELAWARE DEPARTMENT OF PUBLIC INSTRUCTION; Pascal D. Forgione, Jr., State Superintendent of Public Instruction; Delaware State Board of Education; Paul R. Fine, President, Delaware State Board of Education, Defendants.

Civ. A. No. 92–736 MMS.

United States District Court, D. Delaware.

July 1, 1993.

Barbara H. Stratton, of Knepper & Stratton, Wilmington, DE, for plaintiffs.

Sandra A. Reyes, Deputy Atty. Gen., State of Del. Dept. of Justice, Wilmington, DE, for defendants.

## OPINION

MURRAY M. SCHWARTZ, Senior District Judge.

This case arises under the Individuals with Disabilities Education Act. 20 U.S.C. §§ 1400–1485 (1988 and Supp. III 1991) (formerly the Education of the Handicapped Act (EHA)). Plaintiffs, Sarah Slack and her parents, Kathryn and James Peiffer, seek a declaratory judgment and injunctive relief which would require the defendants to pay a portion of the costs necessary to send Sarah to a school offering private residential placement. D.I. 1 at 9–10. Named as defendants are the Delaware Department of Public Instruction, the State Superintendent of Public Instruction, the Delaware State Board of Education and the President of the Delaware State Board of Education. Defendants have moved for judgment on the pleadings and plaintiff has moved summary judgment. D.I. 9, 13. This Court has jurisdiction pursuant to 20 U.S.C. § 1415(e)(4)(A) (1988).

Because the defendants have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, they have appropriately based their arguments on matters contained within the complaint and matters incorporated into the complaint. Plaintiffs, however, in moving for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, have filed with the Court materials beyond the pleadings. *See* D.I. 16. Rule 56 requires the Court to enter summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. 56(c). *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Defendants have failed to raise any genuine issues of material fact and the Court finds their arguments in support of their motion for judgment on the pleadings unpersuasive. Accordingly, defendants' motion will be denied and plaintiffs' motion will be granted.

## I. *Background*

At the center of this dispute is Sarah Slack, a fourteen-year-old girl who has an inability to perform comparably to her peers at school. As a result, her parents and teachers have attempted to find a suitable educational environment for Sarah. The issues of a suitable environment for a child like Sarah, and payment for placement in such an environment, are currently governed by both federal and state law.

For each year between 1986 and 1990, as a first step in attempting to find a suitable educational environment for Sarah, her parents and educators agreed upon her "individualized education program" (IEP) as outlined by a federal statute, 20 U.S.C. § 1401(a)(20) (Supp.III 1991). D.I. 2 at Ex. A, 6–11.[1] In the fall of 1991, however, Sarah's parents refused to sign Sarah's IEP, which called for

Sarah's continued enrollment in a Level IV special education program at Skyline Middle School. D.I. 2 at Ex. A, 12.[2]

As a result of their dissatisfaction, Sarah's parents had the A.I. duPont Institute conduct an independent evaluation of Sarah as authorized by 20 U.S.C. § 1415(b)(1)(A) (Supp.III 1991). D.I. 2 at Ex. A, 12.[3] Dr. Brian Mesinger of the A.I. duPont Institute concluded that he knew "very few good public school programs equipped to deal with a youngster such as Sarah and ... heartily encourage[d] the parents to look at private programs available." D.I. 2 at Ex. A, 34.

A search for more appropriate schools led the parents to the Benedictine School, a twenty-four hour facility in Maryland. In order to fund Sarah's placement at the Benedictine School, her parents requested financial aid pursuant to Del.Code. Ann. tit. 14, § 3124 (1981).[4] On June 17, 1992, the parents sent their initial request to the Superintendent of the Red Clay Consolidated School District (Red Clay), Dr. Reginald Leon Green. Dr. Green referred the matter to Dr. Roberta Walker, the Director of Special Education Services for Red Clay. D.I. 1 at ¶¶ 17–18. On July 26, 1992, having received no response from Red Clay, Sarah's parents, pursuant to a federal statute 20 U.S.C. § 1415(b)(2) (1988), initiated a "Due Process Hearing" to contest the proposed IEP.[5] Al-

---

1. Subsection (a)(20) of the statute reads, in part:

   The term "individualized education program" means a written statement for each child with a disability developed in any meeting by a representative of the local educational agency ... the teacher, the parents or guardian of such child, and, whenever appropriate, such child....
   20 U.S.C. § 1401(a)(20) (Supp.III 1991). The statute goes on to explain the requisite contents of the IEP.

2. The parents' refusal was based upon a perceived lack of progress by Sarah, as well as verbal and physical assaults at the hands of other students. D.I. 2 at Ex. A, 23.

3. As part of the procedures required by Congress, the statute includes:

   an opportunity for the parents or guardian of a child with a disability to examine all relevant records with respect to the identification, evaluation, and educational placement of the child, and the provision of a free appropriate public

   education to such child, and *to obtain an independent educational evaluation of the child....*
   20 U.S.C. § 1415(b)(1)(A) (Supp.III 1991) (emphasis added).

4. Del.Code Ann. tit. 14, § 3124(a) (1981) states, in part, "Private placement with financial aid shall be granted only to a 'complex or rare' handicapped person...." The parties do not dispute that Sarah qualifies as "complex or rare" under the statute.

5. The federal statute provides, in part, "Whenever a complaint has been received ... the parents or guardian shall have an opportunity for an impartial due process hearing which shall be conducted ... as determined by state law...." 20 U.S.C. § 1415(b)(2) (1988). Delaware law, in turn, states, "A parent, district or state agency may initiate a hearing concerning any right or entitlement conferred by this chapter." Del. Code Ann. tit. 14, § 3135(a) (Supp.1992). Delaware law also provides for the State Superintendent to appoint a hearing panel, Del.Code Ann. tit. 14, § 3135(c) (Supp.1992), requires a deci-

though an initial Due Process Hearing was scheduled for September 21, 1992, Red Clay and Sarah's parents agreed to postpone it in order to conduct a District Identification, Placement, Review and Dismissal (IPRD) meeting at which the issue of private placement would be reviewed. D.I. 16 at Ex. 1.[6]

The participants in the IPRD found Sarah to be a "rare and complex child" pursuant to Del.Code Ann. tit. 14, § 3124, and agreed with Sarah's parents that twenty-four hour placement was appropriate. As a consequence, a new IEP was prepared by Red Clay and, as part of an "Application for Tuition Reimbursement", was sent to the State of Delaware Department of Public Instruction on October 7, 1992. D.I. 2 at Ex. A.

The State, in turn, referred the matter to one of its committees, the "Inter–Agency Collaborative Team" (ICT). On October 15, 1992, contrary to the agreement between Red Clay and the parents, the ICT made the following conclusions:

(1) The program Sarah was in last year at Skyline did not adequately address her needs; (2) Sarah is not appropriate for homebound instruction; (3) *No justification for twenty-four hour residential placement was presented.*

D.I. 16 at Ex. 2 (emphasis added). The letter from ICT explained that Red Clay "had not exhausted all of the options available" and expressed hope that a new plan could be developed. D.I. 16 at Ex. 2.

The ICT's denial of aid led to a rescheduling of the "Due Process Hearing" on October 20, 1992. D.I. 2 at Ex. B, 1.[7] Prior to the hearing, Red Clay had requested, and received, dismissal as a party because it had approved payment for residential placement. D.I. 2 at Ex. B, 3. For this reason, the dispute at the Hearing was between Sarah's

parents and the State. The Panel's subsequent opinion reflects both the issues to be decided and the position of the parties. With respect to the issues to be decided, the Panel wrote:

The parties, through counsel, agreed that the issues before the Panel were as follows:

1. Is Sarah Slack a rare or complex child as defined in 14 Del.C. § 3124 and the Individuals with Disabilities Act, 20 U.S.C. § 1412, et seq.?

2. Does the State have a suitable free and appropriate program of education for Sarah Slack?

D.I. 2 at Ex. B, 4.

As to the positions taken by each party, the Panel articulated the State's position at the hearing as:

Sarah Slack is not a rare or complex child, as that term is defined by the law, or, in the alternative, that even if Sarah Slack is a rare or complex child, there exists a suitable free and appropriate program of education within the State, and thus, *she does not qualify for private placement with financial aid from the State.*

D.I. 2 at Ex. B, 5 (emphasis added). The State argued against all private placement and did not argue against twenty-four hour placement by advancing any lesser private placement.

The Panel's decision reflects Sarah's parents position as:

Mr. and Mrs. Peiffer believe that Sarah is a rare and complex child and that the State does not have currently in place for her a suitable free and appropriate program of education. *It is their position that Sarah's educational needs should be met by placement at the Benedictine*

---

sion from the panel within forty-five days of the initial complaint, Del.Code Ann. tit. 14, § 3136 (Supp.1992), and defines the membership of the panel, Del.Code Ann. tit. 14, § 3137 (Supp.1992).

**6.** The IPRD committee was formed pursuant to state law which provides:

The determination shall be made by a committee appointed by the local school board of education for identification, placement, review

and dismissal of handicapped persons and by the State Board of Education that no school district or other state agency has a suitable free and appropriate program of education for the particular person.

Del.Code Ann. tit. 14, § 3124(a) (1981).

**7.** The school district is currently paying its share of the cost of residential placement at the Benedictine School. D.I. 15 at 13, n. 3.

*school, a 24–hour residential program in Ridgely, Maryland.*

D.I. 2 at Ex. B, 5 (emphasis added).

In addition to these statements of position, all the evidence upon which the Panel relied concerned a choice between twenty-four hour placement and placement in public school. The State's only witness, Dr. Martha Brooks, testified about the ICT's refusal to reimburse Sarah's tuition, D.I. 2 at Ex. B, 7, and offered the Meadowood program at Dickinson High School as "very parallel" to the program at Benedictine. D.I. 2 at Ex. B, 9. Nowhere in any of the Panel's summation of the State's sole witness's testimony is there reference to private placement other than the residential program at Benedictine. In addition, all of plaintiffs' witnesses, who recommended an educational placement for Sarah, recommended the Benedictine School.[8]

In its decision, the Panel made two clear findings: (1) "Sarah Slack does fall within the definition of a rare and complex disabled person." D.I. 2 at Ex. B, 18; (2) "the State has failed to meet its burden of establishing that it does have a suitable free and appropriate program for Sarah Slack." D.I. 2 at Ex. B, 19. As the Panel itself subsequently explained, "Having made these above findings, the Panel is compelled, under the law, to find that Sarah Slack is entitled to private placement." D.I. 2 at Ex. B, 20.

Unfortunately, the precise nature of the required private placement was left ambiguous. The only clear finding made by the Panel with respect to Sarah was that: "Sarah is entitled to a private placement that is reasonably calculated to provide her with the educational opportunities to meet the goals and objectives of the IEP." D.I. 2 at Ex. B, 21. With respect to twenty-four hour placement, the Panel stated:

> In so finding, however, the Panel does not mean to imply that the Benedictine School is the appropriate, private placement for Sarah. The Panel is cognizant of the fact

that it was the Benedictine School for which the parents are seeking reimbursement. However, some of the concerns that were raised regarding [one of State's alternatives] were also not specifically addressed regarding the Benedictine School. Therefore, the Panel is unable to say that the Benedictine School would be an appropriate placement for Sarah. In addition, the Panel notes that the proposed IEP ... is addressed mainly to classroom activities, rather than the proposed "24–hour social milieu" that the Benedictine School was offered as providing.... Therefore, in deciding that, under the law, Sarah is entitled to private placement, the Panel does not decide that Sarah is entitled to placement at the Benedictine School, or indeed, to 24–hour residential placement

> The panel recommends that a mechanism for evaluating the effectiveness of whatever private placement is utilized be established as soon as possible....

D.I. 2 at Ex. B, 20–22.

As a result of the Panel's decision, plaintiffs demanded the Delaware Department of Public Instruction pay its share of the cost of residential placement. D.I. 10 at Ex. 1. In response, on November 13, 1992, the Department of Public Instruction offered to pay its share of day-school placement costs and any transportation costs. D.I. 10 at Ex. 2. Notwithstanding the State's refusal to pay, Sarah enrolled at the Benedictine School on November 16, 1992. D.I. 10 at Ex. 2, 2. Due to the disagreement over the effect of the Due Process Panel's decision, plaintiffs filed a complaint with this Court on December 28, 1992. D.I. 1.

## II. *Discussion*

### A. *"Party Aggrieved"*

Defendants first argue the statutory basis of plaintiffs' claim does not provide them a cause of action.[9] The pertinent section of the statute states,

---

8. *See* D.I. 2 at Ex. B, 12 (Dr. Roberta Walker); 13 (Dr. Brian Mesinger); 13 (Mr. Jack Hill); 14 (Ms. Janine Carello); 16 (Dr. Martha Freeman); 17 (Mr. and Mrs. Peiffer). The only witness who did not mention the Benedictine School was Sar-

ah's grandmother, and she did not speak to educational placement. D.I. 2 at Ex. B, 17.

9. While the parties, and some courts, *see, e.g., Doe v. Anrig*, 500 F.Supp. 802, 804–05 (D.Mass. 1980), have addressed this issue as one of juris-

Any party aggrieved by the findings and decision made under subsection (b) of this section ... shall have the right to bring a civil action with respect to the complaint presented pursuant to this section....

20 U.S.C. § 1415(e)(2) (1988). Defendants argue that at the relevant Due Process Hearing, plaintiffs actually prevailed and thus do not qualify as "aggrieved" under the statute.

The position taken by the plaintiffs at the hearing, as reflected in the introduction of the Due Process Panel's decision, was that "Sarah's educational needs should be met by placement at the Benedictine school, a 24–hour residential program in Ridgely, Maryland." D.I. 2 at Ex. B, 5. Plaintiffs clearly went into the Due Process Hearing hoping to have the Panel place Sarah in a twenty-four hour facility. At the close of the decision, the Panel explained,

Therefore, in deciding that, under the law, Sarah is entitled to private placement, the Panel does not decide that Sarah is entitled to placement at the Benedictine School, or indeed, to 24–hour residential placement.

D.I. 2 at Ex. B, 21. The decision thus reflects only a partial victory for the plaintiffs. The Panel acknowledged that private placement was necessary for Sarah, but did not go further and grant the plaintiffs that which they sought, i.e. twenty-four hour placement.

■■■ Where a due process panel grants plaintiffs the relief requested, plaintiffs may proceed in federal court under 42 U.S.C. § 1983 only if the panel's order is not followed. *See Robinson v. Pinderhughes*, 810 F.2d 1270, 1275 (4th Cir.1987) (city's decision not to comply with hearing officer's order for twenty-four placement properly brought under 42 U.S.C. § 1983 as a deprivation of rights); *Grace B. v. Lexington Sch. Comm.*, 762 F.Supp. 416, 418 (D.Mass.1991) (defendants' refusal to follow hearing officer's order

for placement at particular school properly brought under 42 U.S.C. § 1983). In this matter, however, while plaintiffs prevailed on the legal issues, they did not obtain the relief requested at the Due Process Hearing. Other courts faced with similar partial victories have found plaintiffs aggrieved parties. *See Chris D. v. Montgomery County Bd. of Educ.*, 753 F.Supp. 922, 927 n. 22 (M.D.Ala. 1990) (finding aggrieved party because "parents did not receive from the hearing officer all the relief they requested...."); *Diamond v. McKenzie*, 602 F.Supp. 632, 635 (D.D.C. 1985) (party aggrieved when hearing officer did not recommend 24–hour placement because officer had concluded she lacked requisite authority). The Court finds the plaintiffs were an "aggrieved party" under the statute, and have properly filed this action in ·federal court.[10]

## B. *The Due Process Panel Decision*

The purpose of the Individuals with Disabilities Act is "to assure that all children with disabilities have available to them ... a free appropriate public education which emphasizes special education and related services designed to meet their unique needs...." 20 U.S.C. § 1400(c) (Supp.III 1991). In order to implement this goal, Congress has required individual states to "establish and maintain procedures ... to assure that children with disabilities and their parents are guaranteed procedural safeguards...." 20 U.S.C. § 1415(a) (Supp.III 1991).

### 1. *Finality*

With respect to the procedures surrounding the Due Process Panel, both federal and Delaware state law, and their respective accompanying regulations, require a Due Process Panel to make a final decision. *See* 20 U.S.C. § 1415(e)(1) (1988) ("A decision made in a hearing ... shall be final...."); 34 C.F.R. § 300.512(a)(1) (1992) ("The public

diction, it is one of statutory standing. *See Warth v. Seldin*, 422 U.S. 490, 500, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) ("Essentially, the standing question ... is whether the ... statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief."). The issue raised by the defendants is whether the plaintiffs here can be understood to be "aggrieved" under

the statute on which they base their claim, 20 U.S.C. § 1415(e)(2). Jurisdiction, on the other hand, has been granted by Congress in 20 U.S.C. § 1415(e)(4)(A) (1988).

10. In light of this finding, the Court does not address how, or if, plaintiffs could have proceeded under 42 U.S.C. § 1983 (1988).

agency shall insure that not later than 45 days after the receipt of a request for a hearing ... [a] final decision is reached in the hearing...."); Del.Code Ann. tit. 14, § 3136 (Supp.1992) ("The State Superintendent of Public Instruction shall insure that, not later than 45 days after the receipt of a request for a hearing ... [a] final decision is reached in the hearing...."); Administrative Manual: Programs for Exceptional Children, Delaware State Board of Education at 78 (March 19, 1992) ("The Due Process Hearing Panel shall reach a final decision....").

The legislative and administrative concern for prompt final resolution has been reflected in judicial opinions. As the United States Court of Appeals for the Third Circuit explained, "the EHA and its implementing regulations reflect the importance not only of procedural protection but also of *prompt resolution of disputes over the proper education of a handicapped child.*" *Muth v. Central Bucks High School Dist.*, 839 F.2d 113, 124–25 (3d Cir.1988) (emphasis added), *rev'd on other grounds, Dellmuth v. Muth*, 491 U.S. 223, 232, 109 S.Ct. 2397, 2402, 105 L.Ed.2d 181 (1989). In *Muth*, the district and appellate courts had found plaintiffs entitled to reimbursement from the state of Pennsylvania because of procedural flaws in Pennsylvania's administrative process. Although the decision of the Court of Appeals for the Third Circuit was overturned by the Supreme Court in *Dellmuth v. Muth*, 491 U.S. at 232, 109 S.Ct. at 2402, the Supreme Court's majority opinion did not address the finality issue and only reversed the appellate court's ruling that the Act abrogated a state's eleventh amendment immunity. 491 U.S. at 232 n. 3, 109 S.Ct. at 2402 n. 3.[11] In dissent, however, Justice Brennan, joined by three other justices, noted "[t]here was an alternative ground for the Court of Appeals' judgment against Pennsylvania—that because of the ... remand ... following respondent's administrative appeal, respondent was de-

prived of the timely 'final' judgment to which he is entitled under 20 U.S.C. § 1415(e) and 34 C.F.R. § 300.512 (1988)." *Dellmuth*, 491 U.S. at 242, 109 S.Ct. at 2407–08 (Brennan, J., dissenting).[12] *See also Antkowiak v. Ambach*, 838 F.2d 635, 641 (2d Cir.) ("While state procedures which more stringently protect the rights of the handicapped and their parents are consistent with the EHA and thus enforceable, those that merely add additional steps not contemplated in the scheme of the Act are not enforceable."), *cert. denied, Doe v. Sobol*, 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988) (citation omitted); *Helms v. McDaniel*, 657 F.2d 800, 805–06 (5th Cir.) ("Congress made unmistakably clear that the hearings provided by the Act were to be impartial and result in final decisions.... '[A] party having gone through the administrative processes ... shall be entitled to a final decision, subject only to court appeal.'") (quoting *In the Matter of the "A" Family*, 184 Mont. 145, 602 P.2d 157, 167 (1979)), *reh'g denied*, 664 F.2d 291 (5th Cir.1981), *cert. denied*, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982).

■ The Due Process Panel's decision does not comport with the requirement of finality. By the time the Panel held the Due Process Hearing, numerous committees had already addressed Sarah's case.[13] Despite the tortured path to the Due Process Hearing, when Sarah's parents received the Panel's decision, the fate of their daughter was still unknown and rested in the Panel's cryptic conclusion:

> The panel recommends that a mechanism for evaluating the effectiveness of whatever private placement is utilized be established as soon as possible....

D.I. 2 at Ex. B, 20–22. The lack of finality in referring the case to yet another committee, or some other "mechanism", completely undermines the compelling concern for prompt

---

**11.** Congress has since expressly abrogated a state's eleventh amendment immunity. 20 U.S.C. § 1403(a) (Supp.III 1991).

**12.** Justice Brennan was joined by Justices Marshall, Blackmun and Stevens.

**13.** An initial IEP had been proposed and rejected; the Director of Special Education Services for the Red Clay School District had reviewed the case; Red Clay's Identification, Placement, Review and Dismissal meeting had occurred and produced a subsequent IEP; and the State's Inter–Agency Collaborative Team had issued its opinion.

resolution of conflicts under this Act. Since Sarah has to be in an educational environment, the issue then becomes whether Sarah's parents or the defendants bear the cost of the lack of finality while Sarah's parents await yet another decision by some other state body.

### 2. Content of the Decision

The lack of a final decision from the Due Process Panel does not require the case be returned to the Panel for reconsideration. The federal statute under which plaintiffs proceeded provides, "In any action brought under this paragraph the court ... shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(e)(2) (1988). Considering the concern for finality and that many school months have passed, it is appropriate for the Court to resolve the underlying issue of whether Sarah's parents are entitled to reimbursement for twenty-four hour placement. Looking at what the Panel did decide and the legal context of the Panel's opinion, I conclude reimbursement for twenty-four hour placement is appropriate.

At the Hearing, the two stipulated issues before the Panel were:

Is Sarah Slack a rare or complex child as defined in 14 Del.C. § 3124 and the Individuals with Disabilities Act, 20 U.S.C. § 1412, et seq.? [and] Does the State have a suitable free and appropriate program of education for Sarah Slack?

As discussed, the Panel decided both these issues in the plaintiffs' favor. By deciding that the State did not have "a suitable free and appropriate program of education" for Sarah, the Panel necessarily decided that Sarah was entitled to private placement.[14] The only issue unresolved by the Panel was the precise nature of the appropriate private placement.

Considering the positions and that evidence of the parties only addressed twenty-four hour placement, once the Panel had decided in favor of private placement, it had no options as to the nature of the private placement. The parents' position was that Sarah should be placed in a twenty-four hour

residential program at the Benedictine School. D.I. 2 at Ex. B, 5 (emphasis added). In response, the State did not choose to argue in favor of alternative private placement. Instead, the State choose to argue that

Sarah Slack is not a rare or complex child, as that term is defined by the law, or, in the alternative ... even if Sarah Slack is a rare or complex child, there exists a suitable free and appropriate program of education within the State, and thus, *she does not qualify for private placement with financial aid from the State.*

D.I. 2 at Ex. B, 5 (emphasis added).

By choosing to argue that Sarah did not qualify for any type of private placement, the State made a tactical choice not to pursue day placement as an alternative to residential placement. Thus, when the Panel found that Sarah was entitled to private placement, it had no power other than to grant residential placement. In short, day-school placement had not been brought before the Panel by the State and was not an option the Panel had before it.

To the extent the Panel considered or endorsed private placement other than residential placement, its effort was ill conceived and should not be binding upon a court. When an administrative body has gone outside the scope of the issues or positions put before it, courts have refused to follow the administrative ruling. *See Hiller v. Board of Educ.,* 674 F.Supp. 73, 77 (N.D.N.Y.1987) (by reversing finding that child was handicapped when only issue before state agency was out-of-state placement, state Commissioner exceeded authority and court was not bound by Commissioner's decision); *Antkowiak v. Ambach,* 638 F.Supp. 1564, 1570 (W.D.N.Y.1986) (Commissioner lacked authority under federal law to review all issues in a case and therefore Commissioner's decision not considered by the court), *rev'd on other grounds,* 838 F.2d 635 (2d Cir.1988), *cert. denied, Doe v. Sobol,* 488 U.S. 850, 109 S.Ct. 133, 102 L.Ed.2d 105 (1988).

14. As the Panel acknowledged, "Having made these above findings, the Panel is compelled, under the law, to find that Sarah Slack is entitled to private placement." D.I. 2 at Ex. B, 20.

When administrative rulings go beyond the issues and evidence presented by the parties, opportunities for erroneous administrative decisions abound. In such cases, the parties have not had the opportunity to address the issue to which the administrative body has extended its attention. Here, because it was not an issue, Sarah's parents neither argued nor presented evidence as to why day-school placement would be inappropriate.[15] Under these circumstances, for the Panel to embrace a position not advanced by either party, nor supported by the evidence upon which the Panel relied, circumvents the procedures leading up to the Hearing. The procedures culminated in the issues and positions presented to the Panel, and those issues and positions did not include private placement other than twenty-four hour placement. Accordingly, to order private placement other than twenty-four hour placement would go beyond the scope of the matters presented to the Panel and should not be enforced in these circumstances.

### III. *Conclusion*

In summary, the Court cannot allow the Due Process Panel's decision to stand because it lacks finality. In addition, based upon the findings made by the Panel and the legal context of those findings, the Court finds the legal effect of the decision was to grant plaintiffs reimbursement for twenty-four hour placement. An order will issue granting plaintiffs' motion for summary judgment and denying defendants' motion for judgment on the pleadings.

---

**15.** Indeed, Sarah's mother stated in an affidavit: "I was present throughout the Due Process Hearing and heard the testimony of all the witnesses.... None of the testimony by any of the witnesses discussed the possibility of Sarah attending the day program at the Benedictine School and being transported to and from the school on a daily basis." D.I. 23 at C–3.